# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARK VERSTUYFT, ROBIN VERSTUYFT, THE BEYER LIVING TRUST, GORDON KUENEMANN, and WENDY KUENEMANN | § § § § § | |
| Plaintiffs, | § § | Case No. 5:24-cv-229-JKP |
| vs. | § § | |
| WELLS FARGO BANK, N.A. and WELLS FARGO NATIONAL BANK WEST | § § § § | |
| Defendants. | § § § | |

**WELLS FARGO BANK, N.A. AND WELLS FARGO NATIONAL BANK WEST'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Factual Allegations ................................................................................. 2

        B.      Procedural History ................................................................................. 4

III.    STANDARD OF REVIEW ................................................................................... 5

IV.     THE KUENEMANNS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE
        GRANTED ............................................................................................................ 6

        A.      The Kuenemanns' Knowing Participation Claims Fail ........................... 6

                1.      Knowing Participation Is Only A Cause of Action for Cases in Equity
                        Against "Joint Tortfeasors" ..................................................... 6

                2.      Knowing Participation In a Fraud Is Not a Recognized Cause of Action .. 9

                3.      The Kuenemanns Fail to Make Factual Allegations Demonstrating Wells
                        Fargo Had Actual Knowledge of Either a Fiduciary Duty or the Breach
                        Thereof .......................................................................... 9

        B.      The Kuenemanns Fail to Allege a Cognizable Duty To Support Their Negligence
                Claim ................................................................................... 18

V.      THE PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE TEXAS
        THEFT LIABILITY ACT ................................................................................... 19

        A.      The Kunemann's TTLA Claim Against Wells Fargo Fails ................... 19

        B.      Plaintiffs' TTLA Claim Against WF West Fails. ................................ 20

VI.     CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott v. Equity Grp., Inc.*,
2 F.3d 613 (5th Cir. 1993) ........................................................................................ 17

*Aguilar v. PNC Bank, N.A.*,
853 F.3d 390 (8th Cir. 2017) .................................................................................... 15

*Ahmed v. Bank of Whittier, N.A., ,*
No. 05-21-00058-CV , 2022 WL 1401432 (Tex. Ct. App. May 4, 2022) ............................ 11

*Alexander O & G, L.L.C. v. Nomad Land & Energy Res., L.L.C.*,
313 F. Supp. 3d 794 (S.D. Tex. 2018) ........................................................................ 11

*Allison v. J.P. Morgan Chase Bank, N.A.*,
No. 1:11-CV-342, 2012 WL 4633177 (E.D. Tex. Oct. 2, 2012) ................................. 19, 20

*Amacker v. Renaissance Asset Mgmt. LLC*,
657 F.3d 252 (5th Cir. 2011) ............................................................................... 17-18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 5, 19, 20

*Bellum v. PCE Constructors, Inc.*,
407 F.3d 734 (5th Cir. 2005) ...................................................................................... 9

*Berman v. Morgan Keegan & Co.*,
455 F. App'x 92 (2d Cir. 2012) ................................................................................. 16

*Castillo v. Arrieta*,
368 P.3d 1249 (N.M. Ct. App. 2016) ......................................................................... 12

*CBIF Ltd. P'ship v. TGI Friday's Inc., No. 05-15-00157-CV*,
No. 05–15–00157, 2017 WL 1455407 (Tex. Ct. App. Apr. 21, 2017) .......................... 10

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ...................................................................................... 5

*First United Pentecostal Church of Beaumont v. Parker*,
514 S.W.3d 214 (Tex. 2017) ................................................................................... 6, 7

*Franklin D. Azar & Assocs., P.C. v. Bryant, No.*,
No. 4:17-CV-00418, 2019 WL 5390172 (E.D. Tex. July 30, 2019),
*R&R adopted*, 2019 WL 4071782 (E.D. Tex. Aug. 29, 2019) ...................................... 10

*In re Agape Litig.*,
773 F. Supp. 2d 298 (E.D.N.Y. 2011) ........................................................................ 11

*In re DePuy Orthopaedics*
   888 F.3d 753 (5th Cir. 2018) ........................................................... 6, 7, 9

*JSC Neftegas-Impex v. Citibank, N.A.,*
   365 S.W.3d 387 (Tex. Ct. App. 2011) ............................................. 10, 17

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*
   160 S.W.2d 509 (Tex. 1942) ................................................................... 7

*Litson-Gruenber v. JPMorgan Chase & Co.,*
   No. 7:09-CV-056, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) ........... 10, 13, 17

*Marlin v. Moody Nat'l Bank, N.A.,*
   No. 04-4443, 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006),
   *aff'd*, 248 F. App'x 534 (5th Cir. 2007) ............................................. 16

*Marlin v. Moody Nat'l Bank, N.A.*
   248 F. App'x 534 (5th Cir. 2007) .......................................................... 18

*Matter of Gober,*
   100 F.3d 1195 (5th Cir. 1996) .............................................................. 12

*Meadows v. Hartford Life Ins. Co.,*
   492 F.3d 634 (5th Cir. 2007) ............................................................ 8, 13

*Meyer v. Cathey,*
   167 S.W.3d 327 (Tex. 2005) ................................................................. 10

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.,*
   800 F. App'x 239 (5th Cir. 2020) ......................................................... 6-7

*New York Life Ins. Co. v. Brown,*
   84 F.3d 137 (5th Cir. 1996) .................................................................. 12

*Nomlaki Indians v. Umpqua Bank,*
   846 F. App'x 589 (9th Cir. 2021) .......................................................... 14

*Olmos v. David B. Giles P.C.,*
   No. 3:22-CV-0077, 2022 WL 1289556 (N.D. Tex. Apr. 28, 2022) ........... 11

*Owens v. Comerica Bank,*
   229 S.W.3d 544 (Tex. Ct. App. 2007) ................................................... 18

*Perlman v. Wells Fargo Bank, N.A.,*
   559 F. App'x 988 (11th Cir. 2014) ........................................................ 14

*Rosemann v. St. Louis Bank,*
   858 F.3d 488 (8th Cir. 2017) ................................................................ 15

*Rosner v. Bank of China,*
   528 F. Supp. 2d 419 (S.D.N.Y. 2007) ................................................... 18

*Stanley Bros. Farms, LLC v. McBarron*,
    No. 3:20-CV-00397, 2020 WL 7353759 (N.D. Tex. Dec. 15, 2020) ................................... 20

*Terry v. SunTrust Banks, Inc.*,
    493 F. App'x 345 (4th Cir. 2012) ....................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) .............................................................................................................. 5

*Young Innovations, Inc. v. Dental Health Prod., Inc.,* ,
    No. CV 4:18-01726, 2019 WL 13211665 (S.D. Tex. Aug. 8, 2019) ...................................... 8

*Zayed v. Associated Bank, N.A.*,
    913 F.3d 709 (8th Cir. 2019) ...................................................................................... 14, 17

**RULES**

Fed. R. Civ. P. 12 ................................................................................................................... 5

**STATUTES & REGULATIONS**

26 C.F.R. § 1.1031(k)-1(g)(4)(iii)(B) ............................................................................. 10-11

Tex. Civ. Prac. & Rem. Code § 134.001 .............................................................................. 19

Tex. Civ. Prac. & Rem. Code § 134.003 .............................................................................. 19

Tex. Civ. Prac. & Rem. Code § 134.005(b) ......................................................................... 20

Tex. Penal Code § 6.03 ......................................................................................................... 19

Tex. Penal Code § 31.03 ....................................................................................................... 19

**OTHER AUTHORITIES**

N.M. R. Gov. Bar. 24-109(B)(3) ........................................................................................... 13

N.M. R. of Prof. Conduct 16-115(c) ..................................................................................... 15

## I.      INTRODUCTION

This case arises out of the actions of Christopher Pettit, a disgraced (and now convicted) attorney who appears to have engaged in a complex fraud, involving several different schemes. According to Plaintiffs, Pettit used an account maintained by his law firm at Wells Fargo Bank, N.A. ("Wells Fargo") to perpetrate at least one aspect of one of these schemes.  By Plaintiffs' own admission, Pettit's fraud both long predated his banking relationship with Wells Fargo and expanded well beyond it (including to many other financial institutions).  Nevertheless, Plaintiffs seek to hold Wells Fargo and Wells Fargo National Bank West ("WF West")—the entity that held Pettit's mortgage—liable in this action for the money that Pettit allegedly stole from them.  Wells Fargo and WF West sympathize with their plight.  But they are not responsible for their losses. Wells Fargo did nothing more than provide routine banking services, and WF West did nothing more than provide a mortgage to Pettit and then accept payments on that mortgage.  Neither Wells Fargo nor WF West had any knowledge of Pettit's apparent fraudulent schemes.

At the outset, the Wells Fargo Defendants note that this case does not arise out of a vacuum. Two of the three sets of Plaintiffs here, the Verstuyfts and the Beyer Living Trust, come to this Court following considerable litigation against Wells Fargo in this District's Bankruptcy Court. Pursuant to a prior stipulation, Wells Fargo does not move to dismiss their claims—although it nevertheless believes they both fail to satisfy federal pleading standards and are substantively meritless.[1]   However, the Kuenemanns are new parties.  Because the Kuenemanns were not previously parties to the bankruptcy action or the stipulation, and because they fail to state claims upon which relief can be granted, Wells Fargo and WF West move to dismiss their claims.

---

[1] Because Wells Fargo is not moving to dismiss the Verstuyfts' and Beyer Living Trust's claims, it is contemporaneously filing an Answer.  By filing an Answer, Wells Fargo is not waiving any argument made herein or any potential argument it may make at a future juncture in this action.

Specifically, the Kuenemanns do not allege Wells Fargo or WF West actually knew Pettit was committing a multifaceted, long-running fraud; they did not.  The Kuenemanns do not allege Wells Fargo or WF West did anything other than provide routine banking services for Pettit; they did not.  Instead, the Kuenemanns bring claims that are reserved for joint tortfeasors sued in equity, or are premised on a duty of care that Wells Fargo did not owe them, or are premised on a specific intent by Wells Fargo and WF West to steal their money that they do not allege.  They have asserted claims that are either not legally cognizable or are not supported by any factual allegations that render them plausible.  Consequently, they have failed to plead legally cognizable claims against Wells Fargo and WF West.  As a result, the Kuenemanns' claims should be dismissed in full.

Moreover, Plaintiffs are now seeking, for the first time, to bring a claim against WF West for an alleged violation of the Texas Theft Liability Act ("TTLA").  That claim also fails as a matter of law.  The TTLA requires Plaintiffs to allege that WF West possessed a conscious intent to deprive them of their property—but all they allege is that it accepted mortgage payments from Pettit.  As a result, the sole claim against WF West should also be dismissed and it should be dismissed as a Defendant in this action.

## II.      BACKGROUND

### A.  Factual Allegations

Plaintiffs consist of the Verstuyfts, the Beyer Living Trust, and the Kuenemanns.  (*See* Compl. ¶¶ 7-11.)  Plaintiffs allege that in 2007 Pettit began scheming to take their funds, using his law firm Chris Pettit & Associates, P.C. ("CP&A") and bank accounts opened at various financial institutions.  (*See* Compl. ¶ 16, 18.)  Pettit's scheme involved convincing Plaintiffs, among others, to deposit funds with him that he would then spend rather than return. (*Id.* ¶¶ 17, 55, 59, 63.)

A decade after commencing this scheme, in 2017, CP&A opened two accounts with Wells Fargo, a New Mexico IOLTA account ending in -9174 and a Texas IOLTA account ending in -

5032. (*Id*. ⁋ 19.) At the same time, Pettit opened a personal account at Wells Fargo ending in -4978. (*Id*. ⁋ 19.) When CP&A opened its New Mexico IOLTA account, it provided a "Certificate of Authority for CP&A by the Secretary of State for the State of New Mexico." (*Id*. ⁋ 29.) Wells Fargo determined it "ha[d] no responsibility to determine whether Pettit actually held a New Mexico law license[.]" (*Id*. ⁋ 30.) Plaintiffs do not allege Wells Fargo knew Pettit was in any way defrauding his clients. Instead, they assert Wells Fargo was motivated to grow its banking relationship with Pettit because he was a "High Net Worth client." (*See, e.g.*, *id*. ⁋⁋ 4, 29.)

"[T]he [New Mexico] IOLTA account would lie dormant between September 2017 [from its creation] and April 2021[.]" (*Id*. ⁋ 20.) From then until Pettit filed for bankruptcy on June 1, 2022, he made a series of deposits, transfers, and withdrawals into and from the account. Plaintiffs allege this account activity "*should have caused* Wells Fargo to investigate Pettit[.]" (*Id*. ⁋ 43.) Plaintiffs assert this activity consisted of various transfers, cash deposits in excess of $10,000, checks and wire transfers returned for insufficient funds, and transactions that resulted in a "Not Sufficient Funds" event or an overdraft balance in the account. (*See id*.) Plaintiffs assert these transactions "*should have* been subjected to further scrutiny by Wells Fargo" but "'there were no investigations regarding the opening and/or activity in the . . . CP&A Accounts' other than" an initial investigation into whether Pettit could open the New Mexico IOLTA account and certain subsequent discrete check and ACH alerts. (*Id*. ⁋⁋ 57, 32 (quoting Ex. 13.))[2] Plaintiffs also allege that in or about May 2021 (four years after the opening of the New Mexico IOLTA account), Wells Fargo received a letter from the New Mexico Disciplinary Committee advising it was unable to process overdraft information regarding Pettit, as he was not registered or practicing law in New

---

[2] Plaintiffs assert Wells Fargo "knowingly permitted" Pettit to make transfers from his account. (*Id*. ⁋ 64.) But Plaintiffs do not assert that Wells Fargo had actual knowledge that these transfers were *fraudulent* or make any factual allegations demonstrating as much.

Mexico.  (*See id*. ¶ 42.)  That letter does not request that Wells Fargo take any action as a result of its receipt.  (*See id*. Ex. 22).

Plaintiffs allege that in reality, the banking activity that occurred in Pettit's accounts from April 2021 to June 2022 was in furtherance of a fraud.  They specifically allege Pettit represented to them that CP&A could hold funds as a "'qualified intermediary' for 'like kind property' exchanges pursuant to Section 1031 of the Internal Revenue Code[.]"  (*Id*. ¶ 17; *see also id*. ¶¶ 53, 58, 61.) [3]  Plaintiffs allege that in reliance on this representation, they wired funds to the New Mexico IOLTA account but that Pettit subsequently "drain[ed]" the account rather than hold the funds for their intended purpose.  (*Id*. ¶¶ 55, 59.)  Plaintiffs do not allege Wells Fargo was aware of Pettit's representations to them or that it knew he was in fact defrauding them.

Plaintiffs further allege that several of the transactions draining the New Mexico IOLTA were Pettit's payment of his mortgage.  (*Id*. ¶ 27.)  These monthly payments, sent to WF West as the holder of Pettit's personal mortgage, are the sole connection of WF West to Pettit.  (*Id*. ¶ 22.)

### B.  Procedural History

This action follows litigation in the U.S. Bankruptcy Court for the Western District pending before Chief Judge Gargotta.  The Chapter 11 bankruptcy Trustee for CP&A first obtained extensive discovery from Wells Fargo as part of a Rule 2004 exam.  Thereafter, the Trustee, along with the Verstuyfts and the Beyer Living Trust, filed a complaint against Wells Fargo on May 2, 2023 (the "Bankruptcy Action").  (*See* Bankr. W.D. Tex. Case No. 23-05039-cag ECF No. 1.)

After several amendments, the Trustee brought a claim against WF West under Section 548 of the Bankruptcy Code to recover allegedly fraudulent transfer made to it to pay Pettit's

---

[3] As Plaintiffs explain, Section 1031 permits the seller of real property to avoid recognizing a gain or loss if the resulting funds are used to purchase real property of like kind.  (*See id*. ¶ 2 n.3.)

personal mortgage.  (*See* Case No. 23-05039-cag ECF No. 66.)  Neither the Verstuyfts nor the Beyer Living Trust brought any claim against WF West.

Wells Fargo moved to dismiss the Second Amended Complaint.  (*See* Case No. 23-05039-cag ECF Nos. 87.)  On January 24, 2024, the Bankruptcy Court issued its oral ruling on Wells Fargo's Motion to Dismiss the Second Amended Complaint.  As relevant here, the Court held that the Verstuyfts and the Beyer Living Trust had stated claims against Wells Fargo on their causes of action, with the exception of their claim for civil conspiracy.  Pursuant to stipulation, the Verstuyfts and the Beyer Living Trust dismissed their claims from the bankruptcy action and refiled them here—joined for the first time by the Kuenemanns (who never asserted any prior claim against Wells Fargo) and a new claim against WF West.

## III.    STANDARD OF REVIEW

Wells Fargo moves to dismiss the Kuenemanns' claims, and WF West moves to dismiss the TTLA claim against it, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Review under this Rule requires two steps.  First, the Court must identify all allegations that are mere "conclusory allegations, unwarranted factual inferences, or legal conclusions," *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007), or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These "are not entitled to the assumption of truth" and therefore must be discarded.  *Id.* at 679.

Second, the Court must determine whether the remaining well-pleaded facts, taken as true, "plausibly give rise to an entitlement to relief." *Id.*  When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007)).  The well-pleaded factual allegations must "nudge[] [the] claims across the line from conceivable to plausible[.]"  *Twombly*, 550 U.S. at 570.

5

## IV.   THE KUENEMANNS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  The Kuenemanns' Knowing Participation Claims Fail

#### 1.   Knowing Participation Is Only A Cause of Action for Cases in Equity Against "Joint Tortfeasors"

The Kuenemanns' claims against Wells Fargo for knowing participation in breach of fiduciary duty or fraud (Counts I and II) fail because "knowing participation" as a cause of action only exists in actions at equity against joint tortfeasors.  Here, the Kuenemanns are not bringing an action seeking an equitable remedy (rather, they seek damages); nor do they allege that Wells Fargo engaged in independent tortious conduct separate and apart from its banking of CP&A.

In truth, Plaintiffs are not pursuing a traditional cause of action for "knowing participation." Rather, they bring a claim for aiding-and-abetting, "disguised" as knowing participation.  They do so to "end-run" the Fifth Circuit's decision in *In re DePuy Orthopaedics*, which held that aiding-and-abetting is not a cognizable claim under Texas law.  A careful analysis of that case, and the cases cited therein, reveals the folly of this attempt.  In *DePuy*, the plaintiffs sued Johnson & Johnson for, among other things, allegedly aiding and abetting the sale of defective hip implants. *See* 888 F.3d 753, 763 (5th Cir. 2018).  As the Fifth Circuit explained, however, "[t]he Texas Supreme Court 'has not expressly decided whether Texas recognizes a cause of action for aiding and abetting[.]'" *Id.* at 781 (quoting *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)).  Because a federal court sitting in diversity cannot recognize a cause of action that the state courts do not recognize, the Fifth Circuit held "J & J is entitled to [judgment as a matter of law] on plaintiffs' aiding-and-abetting claim ***because no such claim exists in Texas***." *Id.* at 782 (emphasis added); *see also Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 250 (5th Cir. 2020) ("[W]e cannot recognize a claim that the Texas

Supreme Court has yet to expressly adopt.  For these reasons, we affirm the dismissal of the aiding and abetting claim.").

In reaching that conclusion, the *DePuy* court noted that Texas courts had previously recognized aiding and abetting claims "in some form," and cited to cases involving a principal-agent relationship, joint tortfeasors, and fraudulent transfer liability—although it also expressed doubt that these cases, and the causes of action they brought, remain good law.  *See* 888 F.3d at 782 (noting that these "half-century-old judgments would have to yield to the [Texas Supreme Court's] more timely and direct pronouncements to the contrary.").[4]  With respect to joint tortfeasor liability, the Fifth Circuit cited *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, which involved a situation in which *both* defendants committed *independent* torts and the plaintiff sought *only* the *equitable* remedy of disgorgement from a fiduciary where the fiduciary was wrongfully enriched but the plaintiff could not prove it had suffered any actual damages.[5]  160 S.W.2d 509, 514 (Tex. 1942).  In that circumstance, the court held that where both actors engaged in independently tortious conduct, they could be held jointly and severally liable to satisfy the disgorgement award.  *See id.*  *Kinzbach* thus established that in an action at equity, a court may hold the defendants jointly liable on a theory of "knowing participation"—at least, prior to *DePuy*—where all that is sought is disgorgement because causation cannot be proven or does not exist.  *See Parker*, 514 S.W.3d at 220 ("In *Kinzbach*, we held that the client was not required to

---

[4] Given the Fifth Circuit's statement that these judgments should yield, whether "knowing participation" exists as a cognizable cause of action is, at best, an open question.  Defendants thus reserve their right to argue that "knowing participation" is not a cause of action at all.

[5] In *Kinzbach*, the plaintiff paid more than it needed to on a contract because its agent (who breached his fiduciary duty) colluded with the defendant (which itself committed tortious interference) to conceal that it was willing to accept a lower price.  *See* 160 S.W.2d at 514.

prove damages when he established that a defendant breached a fiduciary duty and obtained a 'secret gain or benefit.'").

With this background, Plaintiffs' attempt to "end-run" *DePuy* becomes clear.  They do not allege Wells Fargo engaged in some tortious conduct independent of its banking relationship with Pettit; nor do they seek an equitable remedy such as disgorgement.  Rather, they are alleging an aiding-and-abetting cause of action mislabeled as knowing participation.  No court—either before or after *DePuy*—has ever held that "knowing participation" is an identical cause of action to "aiding and abetting;" it is ***not***.  *See Young Innovations, Inc. v. Dental Health Prod., Inc.*, No. CV 4:18-01726, 2019 WL 13211665, at *4 (S.D. Tex. Aug. 8, 2019) ("In *Depuy*, the Fifth Circuit held that *Kinzbach Tool*—the first Texas Supreme Court case expressly recognizing the existence of a cause of action for knowing participation in a breach of fiduciary duty—did *not* implicitly recognize any form of an aiding and abetting claim. Instead, the *Depuy* Court characterized "knowing participation" as "a joint-tortfeasor matter." Moreover, the two claims have distinct elemental formulations.").  Indeed, because "knowing participation" does not require proof of causation or damages, adopting it as a form of "aiding and abetting liability by another name" (as Plaintiffs are attempting) would permit plaintiffs to recover without ever showing an injury traceable to defendants.  *Cf. Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (outlining that elements of knowing participation in breach of fiduciary duty claim do not include injury to plaintiff caused by defendant or damages).

The Kuenemanns cannot end-run the Fifth Circuit's decision in *DePuy* and extend knowing participation outside of actions in equity by simply making the stylistic choice to describe participation in the fraudulent scheme as knowing participation rather than aiding and abetting. As a result, the Kuenemanns' claims in Counts I and II must be dismissed.

2.       **Knowing Participation In a Fraud Is Not a Recognized Cause of Action**

Alternatively, the Court should, at the minimum, dismiss the Kuenemanns' "knowing participation in perpetration of a fraud" claim.  (*See* Compl. Count II).  While *Kinzbach* recognized "knowing participation in breach of fiduciary duty," ***no Texas state court has ever recognized a cause of action for "knowing participation in fraud.***  "When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts."  *DePuy*, 888 F.3d at 781.  Even the mere "expan[sion of] state law beyond its presently existing boundaries" violates principles of federalism.  *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 742 (5th Cir. 2005) (internal citations omitted).  Decisions about Texas causes of action must be left to Texas courts, and this Court should not be the first to hold that Texas law allows a cause of action for "knowing participation in a fraud."[6]

3.       **The Kuenemanns Fail to Allege Facts Demonstrating Wells Fargo's Actual Knowledge of Either a Fiduciary Duty or the Breach Thereof**

Even assuming *arguendo* that a claim for knowing participation for breach of fiduciary duty exists under Texas law, the Kuenemanns' claim would still fail because they have failed to plead either actual knowledge or substantial assistance.  Wells Fargo first addresses their failure to plead actual knowledge before turning to the failure to plead substantial assistance.

To the extent "knowing participation" is a viable claim in actions other than at equity, it requires the plaintiff to demonstrate the defendant had "actual awareness, at the time of the conduct, that a fiduciary duty was owed and that the fiduciary was breaching that fiduciary duty."

---

[6] While this Court's analysis can begin and end with the fact that no Texas state court has ever recognized such a claim, Wells Fargo notes further that the origin and purpose of the "knowing participation" claim, as described *supra*, does not support its extension to fraud.  In *Kinzbach*, the Texas Supreme Court fashioned "knowing participation" as a cause of action in an action at *equity*. Plaintiffs here do not bring an equitable fraud claim, nor do they seek an equitable remedy.

*CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *16 (Tex. Ct. App. Apr. 21, 2017); *accord JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 419 (Tex. Ct. App. 2011) ("What JSCNI had to show, then, was that Citibank *intentionally aided* TPS in what it *knew* was a breach of the latter's own fiduciary duty."). Allegations of constructive knowledge or that the defendant "should have known" are insufficient. *See Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 4:17-CV-00418, 2019 WL 5390172, at *4 (E.D. Tex. July 30, 2019) (rejecting argument that knowingly meant "knew or had reason to know"), *R&R adopted*, 2019 WL 4071782 (E.D. Tex. Aug. 29, 2019); *Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09-CV-056, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (plaintiffs must "show[] that the defendant had actual knowledge of the specific primary wrong" and "[p]leading based on an allegation the defendant 'knew or should have known' is insufficient") (citation omitted).

Here, the Kuenemanns have failed to plead actual knowledge twice. They fail to plead Wells Fargo knew a fiduciary duty was owed to them. And they further fail to plead that Wells Fargo knew that duty (to the extent it existed) was being breached.

### a) The Kuenemanns Do Not Establish that Wells Fargo Knew Pettit Owed Them a Fiduciary Duty

The Kuenemanns do not allege facts demonstrating that CP&A owed them a fiduciary duty.[7] CP&A's alleged service as a "qualified intermediary" for 1031 exchanges does not create a fiduciary relationship. Serving as a qualified intermediary simply involves "enter[ing] into a written agreement with the taxpayer[,] . . . acquir[ing] the relinquished property from the taxpayer, … and transfer[ring] the replacement property to the taxpayer." 26 C.F.R. § 1.1031(k)-

---

[7] The Kuenemanns do *not* allege Pettit was their attorney. Absent an attorney-client relationship, simply acting pursuant to another's recommendation does not create a fiduciary relationship. *See Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).

1(g)(4)(iii)(B).  It does not confer fiduciary status.  *See, e.g.*, *Terry v. SunTrust Banks, Inc.*, 493 F. App'x 345, 355-56 (4th Cir. 2012) (affirming dismissal of aiding and abetting breach of fiduciary duty claim against bank for want of underlying duty as a qualified intermediary was not a fiduciary).  Nor is such a relationship created simply because those funds were placed in an IOLTA account.  *See Olmos v. David B. Giles P.C.*, No. 3:22-CV-0077, 2022 WL 1289556, at *4 (N.D. Tex. Apr. 28, 2022) (holding "allegations [plaintiff] placed money into Giles's IOLTA account . . . are insufficient to create a fiduciary duty" and collecting cases in accord).  Further, what matters is not whether Wells Fargo knew Pettit owed a duty in the abstract; what matters is whether it knew he owed a duty to the *Kuenemanns.  See, e.g.*, *In re Agape Litig.*, 773 F. Supp. 2d 298, 325 (E.D.N.Y. 2011) (dismissing aiding and abetting breach of fiduciary duty claim following Ponzi scheme because "Plaintiffs have not plausibly alleged that [Bank of America] had knowledge of the precise agreement between [fraudster] and the Plaintiffs").  The Complaint contains no allegations whatsoever showing Wells Fargo actually knew Pettit owed a duty to these Plaintiffs.

Beyond failing to plead an underlying fiduciary duty, the Kuenemanns have also failed to plead Wells Fargo *knew* of such a duty.  All they plead is that Pettit and CP&A opened and maintained accounts with Wells Fargo.  The fact that an IOLTA account *exists* does not give a bank knowledge that the account owner owes a fiduciary duty to an unknown third-party, given that the funding of such an account does not create a *per se* duty. *See Alexander O & G, L.L.C. v. Nomad Land & Energy Res., L.L.C.,* 313 F. Supp. 3d 794, 802 (S.D. Tex. 2018) (holding the mere deposit of funds into an IOLTA was insufficient to establish a fiduciary duty).  Nor does the fact that a lawyer opens an account for a law firm grant the bank knowledge of the existence of a fiduciary duty.  *See Ahmed v. Bank of Whittier, N.A.,* No. 05-21-00058-CV, 2022 WL 1401432, at *6 (Tex. Ct. App. May 4, 2022), review denied (Feb. 24, 2023).

### b) The Kuenemanns Do Not Establish that Wells Fargo Knew Pettit was Breaching Any Alleged Fiduciary Duty

The Kuenemanns' failure to plead that Wells Fargo knew the alleged duty was being *breached* is all the more glaring.[8]  Here, the ***sole*** allegations of actual knowledge in the Complaint are so-called red flags, and their assertion that Wells Fargo "knowingly permitted" Pettit to be the sole signatory on a New Mexico IOLTA account.  According to the Kuenemanns, Pettit's serving as signatory was a "violation of New Mexico law" because he was not licensed to practice law in New Mexico (although he was licensed elsewhere).  (Compl. ¶ 77; *see also id.* ¶ 19.)  As a threshold matter, it is ***not*** a "violation of New Mexico law."  It is a violation of New Mexico Rule Governing Discipline 17-204(A)(6).  But these rules, which are part of the New Mexico Court Rules, do not have the force of law.  A violation of them subjects an attorney to *disciplinary* action, not civil or criminal liability for any third party, such as a bank.  *See Castillo v. Arrieta*, 368 P.3d 1249, 1257 (N.M. Ct. App. 2016) ("[T]he Rules of Professional Conduct do not have the force of substantive law.").  Indeed, the Rules themselves state that violation of a rule does ***not*** "create any presumption in such a case that a legal duty has been breached" and that "violation of a rule does not necessarily warrant any other non-disciplinary remedy[.]"  N.M. R.P.C. Scope.

And the Kuenemanns do not even plead that Wells Fargo *actually knew* Pettit was violating New Mexico Court Rules.  The Kuenemanns point to Wells Fargo's receipt of a May 12, 2021 letter from the New Mexico Disciplinary Committee stating it could not process overdraft

---

[8] The Kuenemanns seek to short-circuit this analysis by claiming that Pettit has already been found liable. (*See* Compl. ¶¶ 71, 76).  This misstates the record in the bankruptcy action.  There, Pettit was named as a co-defendant but failed to answer the Complaint.  While an entry of default has been entered, no default *judgment* finding liability has been entered against Pettit.  *See* Case No. 23-05039-cag ECF No. 94.  Further, even if one had, it would not preclude Wells Fargo from contesting these facts in this matter. *See Matter of Gober,* 100 F.3d 1195, 1204 (5th Cir. 1996) (abrogated on other grounds by *In re Caton*, 157 F.3d 1026 (5th Cir. 1998) ("[N]o-answer default judgments fail to meet the 'actually litigated' prong of the issue preclusion test.").

information regarding Pettit because he was not registered in New Mexico. (*See* Compl. ▯ 42.) But this letter, by its own terms, did not inform Wells Fargo of whether Pettit was in "violation of New Mexico law," and the Kuenemanns expressly plead elsewhere that Wells Fargo determined it had "*no responsibility* to determine whether Chris Pettit actually held a New Mexico law license[.]" (*Id.* ▯ 30.) The Kuenemanns do not explain or reconcile this fundamental contradiction: if Wells Fargo concluded it was not required to determine whether Pettit actually held a New Mexico law license, it could not also conclude (a) that he did not in fact have one or (b) that his alleged lack of license was a threshold requirement to opening an account under New Mexico law. And the New Mexico Court Rules do not require a financial institution to investigate or determine whether an attorney is following them; rather, they expressly state it is the responsibility of the *State Bar* to determine whether its rules are being followed. *See, e.g.*, N.M. R. Gov. Bar. 24-109(B)(3) ("The determination of whether a financial institution . . . is meeting the requirements of this rule shall be made by the State Bar of New Mexico.").

In any event, the Kuenemanns' allegation regarding Pettit's failure to follow New Mexico Court Rules is a red herring. To plead actual knowledge, the Kuenemanns were required to make factual allegations showing Wells Fargo actually knew "it was participating in the *breach*" of Pettit's fiduciary duties to the Kuenemanns. *Meadows*, 492 F.3d at 639 (emphasis added); *accord Litson-Gruenber*, 2009 WL 4884426, at *2 (aiding and abetting "requires a showing that the defendant had actual knowledge of the *specific primary wrong*") (emphasis added). The Kuenemanns do not accuse Wells Fargo of knowingly participating in a violation of New Mexico Court Rules. They accuse it of knowingly participating in Pettit's breach of fiduciary duty to them. The Kuenemanns were required—but failed—to allege that Wells Fargo actually knew of *that* wrongdoing. Even if Wells Fargo knew Pettit was violating New Mexico Court Rules by serving

as sole signatory on a New Mexico IOLTA account, this allegation would not support the Kuenemanns' claim because it does not demonstrate actual knowledge that Pettit was defrauding his clients. *See Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 716 (8th Cir. 2019) (alleged "sloppy banking" does not demonstrate actual knowledge of a Ponzi scheme).[9]

Aside from this red herring, the Kuenemanns do not make any factual allegations demonstrating that Wells Fargo actually knew of Pettit's fraud. Instead, they return to a well-worn theory often asserted against financial institutions in the aftermath of collapsed frauds: that the transactions in Pettit's account generated "red flags," that Wells Fargo "ignored each of the dozens of red flags," and that as a result Wells Fargo "assisted Pettit to perpetrate the fraud." (Compl. ¶ 65.) Courts routinely reject this theory. As the Eleventh Circuit explained, "merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*." *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (holding allegations regarding "a multitude of atypical transactions and procedural oddities, including: Theodule's opening of various accounts, numerous transfers amongst the accounts within short time periods, thousands of deposits of even dollar amounts, [and] large cash deposits and withdrawals" do not raise a plausible inference of actual knowledge); *see also Nomlaki Indians v. Umpqua Bank*, 846 F. App'x 589, 590 (9th Cir. 2021) (holding allegations of "various irregularities requir[ing] further investigation by Umpqua Bank" were not sufficient to allege actual knowledge).

---

[9] Plaintiffs also allege Wells Fargo "knowingly permitted" Pettit to make transfers and withdrawals. (Compl. ¶ 64.) But this is not an allegation that Wells Fargo had "actual knowledge of the specific primary wrong"—it is simply an allegation that Wells Fargo knew what *it* was doing. Wells Fargo obviously knows of its *own* conduct in permitting transfers; what matters is whether it actually knew of *Pettit's* fraud.

The fact that the activity the Kuenemanns highlight in the Complaint occurred in an IOLTA account does not save their claim.  The Kuenemanns allege Pettit made certain transfers from the New Mexico IOLTA account to his personal account in order to "pay his personal mortgage obligations to Wells Fargo" and that as a result Wells Fargo had "actual knowledge" of the "misuse" of the IOLTA funds.  (Compl. ¶ 72.)  But in New Mexico lawyers must deposit legal fees and expenses paid in advance to them into an IOLTA account and withdraw them when those fees or expenses are incurred.  *See* N.M. R. of Prof. Conduct 16-115(c) ("A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance[.]").  Indeed, the very New Mexico IOLTA manual that the Kuenemanns cite in their Complaint explains attorneys are "required" to deposit these funds in an IOLTA account and then transfer them "to the attorney's personal or business account[.]"  (*See* Compl. Ex. 21 (Trust Account Manual).)

Accordingly, a transfer of funds from an IOLTA account to a lawyer's personal account does not give a bank actual knowledge of a fraud as those funds may very well belong to the lawyer.  *See, e.g.*, *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 409 (8th Cir. 2017) ("Sigillito's drawing of the Womack check on his IOLTA did not put Allegiant on notice that Sigillito was using fiduciary funds. . . . [T]his is because . . . IOLTA accounts could hold client funds and, in certain circumstances, attorney's fees."); *Rosemann v. St. Louis Bank*, 858 F.3d 488, 495 (8th Cir. 2017) ("The multiple-source nature of the IOLTA precluded St. Louis Bank and its employees from knowing whether transactions in the account involved fiduciary funds.").  By the same token, overdrafts and similar events in an IOLTA account do not provide a bank with actual knowledge of an underlying fraud.  *See Rosemann*, 858 F.3d at 498 ("[E]ven if St. Louis Bank knew that Sigillito had fiduciary obligations as to some funds in the account, overdrafts and check kiting may not involve those specific funds[.]") (cleaned up).

Finally, the Complaint details Wells Fargo's internal controls, maintained to satisfy its "Know Your Customer" obligations and other obligations imposed by federal anti-money laundering law. (*See* Compl. ¶¶ 26-32.) The Kuenemanns claim Wells Fargo "ignored" these obligations and the activity in Pettit's account "should have caused Wells Fargo to investigate Pettit[.]" (*Id.* ¶ 43.) But a bank's "'Know Your Customer' obligations are, standing alone, far from sufficient to support a strong inference that it had actual knowledge of [the] fraud. . . . [T]he strongest inference one could draw therefrom is that [defendant] *should have known* of [the] wrongdoing, not that it had *actual knowledge* thereof." *Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95-96 (2d Cir. 2012) (emphasis added). And if the Kuenemanns assert Wells Fargo's alleged violation of its anti-money laundering obligations (which did not occur) states a claim, such a theory has been decisively rejected. *See, e.g.*, *Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (holding the Bank Secrecy Act, requiring banks to take steps to prevent money laundering, "does not create a private right of action and, therefore, does not establish a standard of care"), *aff'd*, 248 F. App'x 534 (5th Cir. 2007).

In sum, the Kuenemanns fail to allege that Wells Fargo actually knew of Pettit's fraud scheme. Instead, they allege that Wells Fargo ***"should have"*** investigated Pettit to uncover the fraud and faults it for conducting "no Investigations regarding the opening and/or activity" . (*See* Compl. ¶¶ 32, 40, 57.) Allegations that a bank "should have" known of a fraud because of red flags does not raise a plausible inference that the institution *actually* knew of the fraud. Indeed, the Kuenemanns' own allegations cut *against* the conclusion that Wells Fargo actually knew of the underlying fraud: the very fact that the Kuenemanns believe Wells Fargo "should have" done more to uncover the fraud demonstrates that Wells Fargo did *not* actually know it was occurring. As the U.S. District Court for the Northern District of Texas explained in a similar case:

Plaintiff fails to allege that Defendant knew the Ponzi defendants were making false representations or stealing the investors' money based on the Ponzi defendants' representations. In essence, the allegations are an artful manner of stating that Defendant should have known of the Ponzi defendants' actions. Plaintiff's factual narrative is, at best, merely a story of suspicious activity that Plaintiff contends should have provided Defendant notice of the ponzi scheme. As such, this is not sufficient to satisfy the requirement of actual knowledge . . . .

*Litson-Gruenber*, 2009 WL 4884426, at \*3. The same result should hold here: Kuenemanns' failure to plead actual knowledge dooms their knowing participation claims.

### c) The Kuenemanns Fail to Allege Wells Fargo Substantially Assisted the Fraud

The Kuenemanns also fail to allege that Wells Fargo "*intentionally* aided" Pettit's breach of fiduciary duty. *JSC Neftegas-Impex*, 365 S.W.3d at 419. Texas courts have not discussed what level of activity constitutes "intentional aid" in a knowing participation claim. However, review of the identical element in aiding and abetting claims is informative. There, the "substantial assistance" prong requires more than just the routine provision of services in the ordinary course of business. "Conduct that inadvertently advances the underlying tort does not amount to substantial assistance[;]" rather, "some element of blameworthiness must be present in the defendant's assistance." *Zayed*, 913 F.3d at 720 (quotation marks and citations omitted); *see also Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 623 (5th Cir. 1993) ("routine" assistance, "even if substantial," is "merely 'grist of the mill'" and does not constitute "substantial assistance").

But the Kuenemanns do not allege Wells Fargo did anything more than open accounts for Pettit and "permit" him to make transfers and withdrawals—the same "assistance" it provides to tens of thousands of customers every day. The Complaint alleges "nothing beyond the provision of routine banking services or, at worst, sloppy banking. The bank provided nothing beyond its standard professional services to assist the scammers in perpetrating their [fraud] scheme." *Zayed*, 913 F.3d at 720. That is not substantial assistance. *See Amacker v. Renaissance Asset Mgmt. LLC*,

657 F.3d 252, 257 (5th Cir. 2011) (holding "[t]he routine execution of trades does not amount to substantial assistance"); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) (permitting deposits and withdrawals does not constitute substantial assistance).

### B. The Kuenemanns Fail to Allege a Cognizable Duty To Support Their Negligence Claim

The Kuenemanns also fail to plead a claim for negligence because they are non-customers to whom Wells Fargo owed no duty. "To maintain a negligence cause of action, a plaintiff must establish a duty owed to it by the defendant." *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. Ct. App. 2007) (citation omitted). But Wells Fargo had no interactions with the Kuenemanns and thus owed them no duty. *See id.* ("Generally, a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship."). In *Owens*, the plaintiffs alleged a bank acted negligently in opening and maintaining accounts for a fraudster who deposited their funds into the accounts and then misappropriated them. *See id.* at 545-46. The plaintiffs "were not customers of the bank" but nevertheless alleged it owed them a duty based upon "industry standards." *Id.* at 547. The trial court entered summary judgment in the bank's favor on the negligence claim and the Court of Appeals of Texas affirmed, holding that the bank "owed no duty to the Owens family as a matter of law[.]" *Id.* So it is here: the Kuenemanns were not customers of Wells Fargo and it accordingly owed them no duty as a matter of law. *See also Marlin*, 248 F. App'x at 540 ("Further, a bank owes a duty of care to customers but not third parties.").

Moreover, even if Wells Fargo owed the Kuenemanns a duty of care (which it did not), they have failed to make any factual allegations demonstrating a breach of its duty. The Kuenemanns contend that Wells Fargo did not follow its own internal policies and procedures in connection with Pettit's accounts. Even if this were true, such a failure would not create a duty of care nor demonstrate its breach. *See Owens*, 229 S.W.3d at 547 ("The Texas Supreme Court has

refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action in favor of customers or others.").

## V.  PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE TTLA

### A.  The Kuenemann's TTLA Claim Against Wells Fargo Fails

The TTLA provides that "[a] person who commits theft is liable for the damages resulting from the theft."  Tex. Civ. Prac. & Rem. Code § 134.003.  To define "theft" the TTLA turns to penal law, which provides a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property."  Tex. Penal Code § 31.03; *see* Tex. Civ. Prac. & Rem. Code § 134.001 (defining theft).  Finally, Texas penal law clarifies that a person acts "with intent . . . when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code § 6.03.  Accordingly, "[t]o state a claim under the [TTLA], the plaintiffs must show that the defendants possessed the requisite intent, which means that the defendants would have had a conscious desire or objective to deprive the plaintiffs of their property."  *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *15 (E.D. Tex. Oct. 2, 2012).

Here, the *sole* allegation in the Complaint is that Wells Fargo  "appropriated the a portion of the [sic] and permitted Pettit to appropriate the funds. . . . These funds were taken intentionally which deprived [the Plaintiffs] of their funds[.]"  (Compl. ¶ 90).  This conclusory assertion, which parrots, the word "intentionally", is entitled to no weight.  *See Iqbal*, 556 U.S. at 663 (holding a Court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  And aside from this "threadbare recital" of the elements of a TTLA claim, the Complaint is devoid of any factual allegations that Wells Fargo had the conscious desire or objective to deprive the Kuenemanns of their property.  As a result, their TTLA claim against Wells Fargo should be dismissed.  *See Allison*, 2012 WL 4633177, at *15 (dismissing TTLA claim for failure to plead factual allegations plausibly demonstrating conscious objective to steal).

### B. Plaintiffs' TTLA Claim Against WF West Fails.

WF West's inclusion as a defendant further demonstrates Plaintiffs' pleading failure. Plaintiffs make *no* allegations about WF West's state of mind.  The only allegation connecting WF West to the TTLA is that "[WF West] unlawfully appropriated these funds by taking them or permitting them to be taken[.]" (Compl. ¶ 89).  This is not a statement of WF West's intentions. Nor is Plaintiffs' sole statement against WF West incompatible with an innocent intent—accepting the funds as payment of the debt Pettit owned on his personal mortgage.  (*See* Compl. ¶ 22).  *See Iqbal*, 556 U.S. at 678 (pleading facts which are "'merely consistent with' a defendant's liability, [ ] stops short of the line between possibility and plausibility of 'entitlement to relief.'").

As a result, the Plaintiffs have failed to state a claim for violation of the TTLA against WF West.  *See Allison*, 2012 WL 4633177, at *15 (dismissing TTLA claim against bank because "[t]here are no pled facts sufficiently stating such a conscious intent on the part of the defendants"); *Stanley Bros. Farms, LLC v. McBarron*, No. 3:20-CV-00397, 2020 WL 7353759, at *3 (N.D. Tex. Dec. 15, 2020) ("The complaint lacks any factual allegation beyond the naked claim that Mike McBarron stole M&M's money with the intent to deprive it of the property. This is akin to a 'formulaic recitation of the elements,' and does not suffice to overcome the defendants' 12(b)(6) motion to dismiss.").[10]  Because the TTLA claim is the sole claim brought against WF West, upon dismissal of this claim it should further be dismissed from this action as a Defendant.

### VI.    CONCLUSION

Wells Fargo respectfully requests that the Court dismiss the Kuenemanns' claims against it and WF West requests that the Court dismiss all the Plaintiffs' claims against it.

---

[10] The TTLA provides that a prevailing party shall be awarded attorney's fees. Tex. Civ. Prac. & Rem. Code § 134.005(b).  Should the Court dismiss any of the TTLA claims, Defendants request the opportunity to petition the Court for the fees they incurred defending against the claim.

Dated: March 25, 2024                    Respectfully submitted,

_/s/ Thomas Farrell_
Thomas Farrell (Id. 06839250)
MCGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Phone: (713) 571-9191
E-Mail: tfarrell@mcguirewoods.com

Jarrod D. Shaw (*pro hac vice*)
Nellie E. Hestin (*pro hac vice*)
Alexander M. Madrid (*pro hac vice*)
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Phone: (412) 667-7907
E-Mail: jshaw@mcguirewoods.com
        nhestin@mcguirewoods.com
        amadrid@mcguirewoods.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

## **CERTIFICATE OF CONFERENCE**

Wells Fargo and WF West have complied with the Standing Order in Civil Cases Assigned to Judge Jason Pulliam.  On March 15, 2024, undersigned counsel conferred with opposing counsel, via telephone, regarding Wells Fargo and WF West's intent to file a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the bases for doing so. That same day undersigned counsel sent written notification to opposing counsel, via electronic mail, informing them of their right to amend the complaint.  Plaintiffs did not timely file a notice of intent to amend their complaint.

*/s/ Thomas Farrell*
Thomas Farrell

## **CERTIFICATE OF SERVICE**

I hereby certify this document filed through the ECF system will be (1) sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 25, 2024, and (2) sent to the attorneys listed below by Email.

*/s/ Thomas Farrell*
Thomas Farrell

Leslie M. Luttrell
**Luttrell + Carmody Law Group**
100 N.E. Loop 410
Suite 615
San Antonio, TX 78216
(210)426-3600
Fax : (210)426-3610
Email: luttrell@lclawgroup.net

Morris E. White, III
**Villa & White LLP**
1100 NW Loop 410, Ste. 802
San Antonio, TX 78213
(210) 225-4500
Fax : (210) 212-4649
Email: treywhite@villawhite.com