**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARK VERSTUYFT, ROBIN VERSTUYFT, THE BEYER LIVING TRUST, GORDON KUENEMANN and WENDY KUENEMANN** | § § § § § § | |
| **Plaintiffs,** | § § | |
| **vs.** | § § | **Case No. 5:24-cv-00229** |
| **WELLS FARGO BANK, N.A. and WELLS FARGO NATIONAL BANK WEST** | § § § § | |
| **Defendants.** | § § | |

**RESPONSE TO MOTION TO DISMISS UNDER FEDERAL RULE**
**CIVIL PROCEDURE 12(b)(6) FILED BY**
**WELLS FARGO BANK, N.A. AND WELLS FARGO NATIONAL BANK WEST**

No. 5:24-cv-00229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to 12(b)(6)

## <u>TABLE OF CONTENTS</u>

**Page**

I. PROCEDURAL BACKGROUND ................................................................................. 1

II. STANDARD OF REVIEW ..................................................................................... 3

III. ARGUMENT AND AUTHORITIES ........................................................................ 4

    A. Joint Tortfeasor Liability for Knowing Participation in the breach of fiduciary duty is a recognized and viable cause of action under Texas Law .................................. 4

    B. Actual knowledge on the part of Wells Fargo has been plead. ............................. 6

    C. Joint Tortfeasor Liability for Knowing Participation in a fraud is a recognized and viable cause of action under Texas Law ............................................................. 10

    D. Pettit has been held liable for breach of fiduciary duty, fraud, negligence, and violation of the Texas Theft Liability Act. ........................................................... 11

    E. Wells Fargo had a duty to the Kuenemanns as well as the Verstuyft Plaintiffs .. 12

    F. Wells Fargo and Wells Fargo West Stole the Plaintiffs' Money and had the Requisite Intent to do so. .................................................................................. 13

CONCLUSION ........................................................................................................ 15

PRAYER ................................................................................................................ 15

CERTIFICATE OF SERVICE ..................................................................................... 16

No. 5:24-cv-00229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to 12(b)(6)                                                                                          Page i

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........................................................................ 3, 4

*Baty v. Protech Ins. Agency*,
63 S.W.3d 841 (Tex. App—Houston 2001, *pet. denied*) ............................ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ........................................................................... 3

*Brewer Pritchard, P.C. v. Johnson*,
7 S.W.3d 862, 867 (Tex. App.—Houston 1999, *pet. granted*) .................... 5

*Darocy v. Abildtrup*,
345 S.W.3d 129, 138 (Tex. App.—Dallas 2011, *no pet.*) ........................... 5

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*,
675 F.3d 849, 854 (5th Cir. 2012) ........................................................ 4, 15

*D'Onofrio v. Vacation Publications, Inc.*,
888 F.3d 197, 216 (5th Cir. 2018) ......................................................... 5, 6

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
318 S.W.3d 867, 881 (Tex. 2010) ............................................................. 4

*Gahagan v. United States Citizenship & Immigration Servs.*,
911 F.3d 298, 302 (5th Cir. 2018) ............................................................. 6

*Hunn v. Dan Wilson Homes, Inc.*,
789 F.3d 573, 581 (5th Cir. 2015) ............................................................. 6

*In re DePuy Orthopaedics,*
888 F.3d 753 (5th Cir. 2018) .......................................................... 5, 6, 10

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
160 S.W.2d 509, 514 (Tex. 1942) ....................................................... 4, 5, 6

*Leal v. McHugh*,
731 F.3d 405, 410 (5th Cir. 2013) ............................................................. 4

No. 5:24-cv-00229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to 12(b)(6)                                                                 Page ii

*McCullogh v. Scarbrough, Medlin & Assocs.*,
  435 S.W.3d 871, 907 (Tex. App.—Dallas 2014) ...................................................... 14

*Meadows v. Hartford Life Ins. Co.*,
  492 F.3d 634, 639 (5th Cir. 2007) .......................................................................... 4, 6

*Milligan, Tr. for Westech Capital Corp. v. Salamone*, 2019 U.S. Dist. LEXIS 143577,
  2019 WL 4003093, at *1 (W.D. Tex. Aug. 23, 2019)................................................ 5, 6

*Rowland v. State*,
  744 S.W.2d. 610, 613 (Tex. Crim. App. 1988) ......................................................... 14

*Texas Bank & Trust v. Helmcamp*,
  506 S.W. 2d 667, 669 (1974) ....................................................................... 9, 12, 13

*Thompson v. City of Waco, Texas*,
  764 F.3d 500, 502–03 (5th Cir. 2014) ......................................................................... 3

*Turner v. Pleasant*,
  663 F.3d 770, 775 (5th Cir. 2011) ............................................................................... 4

*Westergren v. Jennings*,
  441 S.W.3d 670, 680 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ........................ 5

*Wichita Royalty Co. v. City Nat. Bank of Wichita Falls*,
  89 S.W. 2d 394, 400 (1935) ......................................................................... 9, 12, 13

*Willis v. Maverick*,
  760 S.W.2d 642, 645 (Tex. 1998) ................................................................................ 7

*Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.]
  2017, *pet. denied*).......................................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 12........................................................................ 1, 2, 3, 4

Federal Rule of Civil Procedure 41................................................................................... 2

**Statutes**

Tex Pen. Code § 31.03(a) .............................................................................................. 14

Tex. Civ. Prac. & Rem. Code § 134 ...................................................................... 1, 2, 3, 11, 14

No. 5:24-cv-00229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to 12(b)(6)                                                                              Page iii

**Other Authorities**

N.M.R. Gov. Disc. 17-204 ................................................................................................. 8

No. 5:24-cv-00229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to 12(b)(6)                                                                                  Page iv

**I.**
**PROCEDURAL BACKGROUND**

1.      This matter was originally filed in the administratively consolidated bankruptcy proceeding of Chris Pettit & Associates, P.C. ("CP&A") and Christopher John Pettit ("Pettit") under Adversary Number 23-05039 which was pending before the Hon. Craig Gargotta, Chief U.S. Bankruptcy Judge, Western District of Texas, San Antonio Division (the "CP&A Adversary").  Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo National Bank West ("Wells Fargo West") filed motions to dismiss pursuant to Rule 12(b)(6) in the CP&A Adversary (the "Bankruptcy 12(b) Motion") asserting the same challenges that are asserted in their *Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6)* [Dkt. 11] in the instant lawsuit (the "12(b) Motion").  Judge Gargotta heard and ruled on the Bankruptcy 12(b) Motion and on the 7th day of February 2024, entered his *Order Granting In Part And Denying In Part Defendant Wells Fargo Bank, N.A. And Wells Fargo National Bank West's Motion To Dismiss The Second Amended Complaint Pursuant To Rule 12(B)(1), 12(B)(6), And 12(B)(7)* [Adv. Dkt. 120] (the "Bankruptcy 12(b) Ruling").  The Bankruptcy 12(b) Ruling found that Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust stated claims against Wells Fargo for (i) Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A; (ii) Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud by Pettit Against the Clients of CP&A; (iii) Negligence; and (iv) Violation of the Texas Theft Liability Act, Tx. Civ. Prac. & Rem. Code § 134 (collectively the "Surviving Claims"), and also preserved those claims against Wells Fargo West to the extent carved out of the CP&A Adversary pursuant to

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                                 Page **1**

the 12(b) Ruling.

2.      Thereafter, Wells Fargo, Wells Fargo West (the "Wells Defendants"), Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust (the "Verstuyft Plaintiffs"), entered into the *Stipulation Pursuant to Rule 41 F.R.C.P. Dismissing Claims of Mark Verstuyft, Robin Verstuyft, and The Beyer Living Trust Against Wells Fargo Bank, N.A. and Wells Fargo National Bank West Without Prejudice and Stipulation Regarding Service and Rule Rights* [Adv. Dkt. 127] (the "Wells Stipulation")[1].  The Wells Stipulation acknowledges the Surviving Claims, permits the consensual dismissal without prejudice and refiling of the Surviving Claims in with the Court, and provides that the Bankruptcy 12(b) Ruling "*will apply to the District Court Complaint as if that 12(b) Ruling had been made by the District Court*," thus prohibiting a Rule 12(b)(6) challenge to the Surviving Claims by Wells Fargo.

3.      Notwithstanding the express terms of the Wells Stipulation, Wells Fargo has challenged the Surviving Claims under Rule 12(b)(6).  The Plaintiffs acknowledge that the 12(b) Motion challenges three of the four Surviving Claims as asserted by Gordon and Wendy Kuenemann (the Kuenemanns") only:  (i) Count I - Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A; (ii) Count II - Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud by Pettit Against the Clients of CP&A; and (iii) Count III – Negligence (collectively the "Tort Claims").  None of the Plaintiffs have asserted Tort Claims against Wells Fargo West.

4.      The 12(b) Motion challenges the claims of *all Plaintiffs* against *both* Wells Fargo and Wells Fargo West on Count IV – Texas Theft Liability Act Claims (the "TTLA

---

[1]      The Wells Stipulation is attached hereto as Exhibit 1.

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                                 Page **2**

Claims"). The TTLA Claims against Wells Fargo are unquestionably among the Surviving Claims – the fourth of the four delineated Surviving Claims - which have been adjudicated in the Bankruptcy 12(b) Ruling and held to be viable, plausible claims. The Plaintiffs acknowledge that the Wells Stipulation does not prohibit a Rule 12(b)(6) challenge by Wells Fargo West[2] to the TTLA Claims but instead show the Court, as hereinafter discussed, that the well-pleaded facts set forth in the Complaint and supported by the exhibits appended thereto state enough facts to support a viable and plausible claim for relief under the Texas Theft Liability Act against Wells Fargo West.

## II.
## STANDARD OF REVIEW

5.       In the Fifth Circuit, when considering a motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." _Thompson v. City of Waco, Texas_, 764 F.3d 500, 502–03 (5th Cir. 2014) (_citing_ _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" _Id._ (quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Iqbal_, 556 U.S. at 678; _see also_ _Twombly_, 550 U.S. at 570 (holding complaint must allege enough facts to move the claim "across the line from conceivable to plausible").

6.       The determination of whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience

---

[2]      See Exhibit 1, Para. 5

No. 24-229
_Verstuyft, et al v. Wells Fargo Bank, N.A._
Response to Rule 12(b)(6) Motion                                                                 Page 3

and common sense." *Iqbal*, 556 U.S. at 679; *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) ("Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.").  Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (*citing Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

### III.
### ARGUMENT AND AUTHORITIES

7.       The arguments presented hereinafter related to the 12(b) Motion filed by Wells Fargo are made without waiving the position of the Plaintiffs that the 12(b) Motion filed by Wells Fargo is in direct violation of the Wells Stipulation.  The Plaintiffs contend that any challenge to the Surviving Claims under Rule 12(b) is a direct violation of the Wells Stipulation, and the 12(b) Motion should be denied in all things as to Wells Fargo.

**A. Joint Tortfeasor Liability for Knowing Participation in the breach of fiduciary duty is a recognized and viable cause of action under Texas Law.**

8.       As recognized by Judge Gargotta in the Bankruptcy 12(b) Ruling, joint tortfeasor liability for knowing participation in the breach of fiduciary duty is a recognized and viable cause of action under Texas Law.  *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010) (*citing Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)).  The Fifth Circuit has also recognized the existence and viability of a claim for joint tortfeasor liability for knowing participation in the breach of duty of a fiduciary, finding "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (*quoting*

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                    Page **4**

*Kinzbach* 160 S.W.2d at 514 (Tex. 1942)); *see also* <u>*Milligan, Tr. for Westech Capital Corp.*</u> <u>*v. Salamone*</u>, 2019 U.S. Dist. LEXIS 143577, 2019 WL 4003093, at *1 (W.D. Tex. Aug. 23, 2019) (collecting cases that explain that "Texas appellate courts have routinely recognized the existence of a cause of action for knowing participation in the breach of fiduciary duty").

9.      In taking a position contrary to the vast majority of well-reasoned cases, Wells Fargo relies almost exclusively on the Fifth Circuit's decision in <u>*In re DePuy*</u> <u>*Orthopaedics*</u>, 888 F.3d 753 (5th Cir. 2018), to support its contention that "aiding and abetting is not a cognizable claim under Texas law."  (12(b) Motion at pg. 6).  Wells Fargo has elected to bend the words – and asserted cause of action of the Plaintiffs – to fit the *DePuy* narrative and disregard each of the Texas Supreme Court's holding in <u>*Kinzbach*</u>, <u>*ERI Consulting*</u>, a myriad of Texas intermediate courts,[3] as well as the Fifth Circuit's ruling in <u>*D'Onofrio v. Cation Publs., Inc.*</u>, which "recognizes the existence of a cause of action for knowing participation in the breach of a fiduciary duty."[4]   <u>*D'Onofrio v. Vacation*</u> <u>*Publications, Inc.*</u>, 888 F.3d 197, 216 (5th Cir. 2018) (reciting the elements of such a claim)

---

[3]      *See* <u>Brewer Pritchard, P.C. v. Johnson</u>, 7 S.W.3d 862, 867 (Tex. App.—Houston 1999, *pet. granted*); <u>Baty v. Protech Ins. Agency</u>, 63 S.W.3d 841 (Tex. App—Houston 2001, *pet. denied*); <u>Darocy v.</u> <u>Abildtrup</u>, 345 S.W.3d 129, 138 (Tex. App.—Dallas 2011, *no pet.*) ("When a defendant knowingly participates in the breach of a fiduciary duty, he becomes a joint tortfeasor and is liable as such.") (citing <u>Kinzbach</u>, 160 S.W.2d at 514); <u>Westergren v. Jennings</u>, 441 S.W.3d 670, 680 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing <u>Kinzbach</u>, 160 S.W.2d at 514; <u>Wooters v. Unitech Int'l, Inc.</u>, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, *pet. denied*) ("Texas has recognized a cause of action for conspiracy to breach a fiduciary duty in transactions in which a third party knowingly participates in an employee's breach of fiduciary duty during his employment and the third party improperly benefits from it.") (*citing* <u>Kinzbach</u>, 160 S.W.2d at 514).

[4]      It should be noted that <u>D'Onofrio</u> was decided two days before <u>DePuy</u>.  The Panel in <u>DePuy</u> did not discuss <u>D'Onofrio</u> notwithstanding the fact that Judge Higginson served on both panels and the <u>D'Onofrio</u> opinion was authored by Judge Higginson.  The only way to reconcile these two cases is to acknowledge that the they are factually distinguishable from one another.  Specifically, that <u>D'Onofrio</u>, as in this case, involved a claim for knowing participation in a breach of fiduciary duty where <u>DePuy</u> dealt with the aiding and abetting of a negligent undertaking.

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                    Page **5**

(*citing Kinzbach*, 160 S.W.2d at 514); *see also Hunn v. Dan Wilson Homes, Inc*., 789 F.3d 573, 581 (5th Cir. 2015) ("[W]here a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.") (*citing Kinzbach*, 160 S.W.2d at 514); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (reciting the elements of such a claim) (*citing Kinzbach*, 160 S.W.2d at 514).  As Judge Pitman determined in *Milligan v. Salamone*, "[i]t is these cases, not *DePuy*, that control here."  *Milligan v. Salamone*, No. 1:18-CV-327-RP, 2019 U.S. Dist. LEXIS 143577, at *4 (W.D. Tex. Aug. 23, 2019).  Clearly, Judge Pitman recognized the difference between *DePuy* and *D'Onofrio*: the parties in *DePuy* sought a determination that "aiding and abetting" was an independent cause of action, unlike the circumstances in *D'Onofrio* which, like the case at bar, seeks to hold a joint tortfeasor liable for the breach of fiduciary duty of another to the Plaintiffs.[5]

**B.    Actual knowledge on the part of Wells Fargo has been plead.**

10.    Wells Fargo contends that the Complaint does not assert the requisite knowledge required of Wells Fargo to proceed to trial on the joint tortfeasor liability for knowing participation in the breach of fiduciary duty by Pettit and further claims that it did not have knowledge that Pettit owed a fiduciary duty to the Plaintiffs.  However, the facts as plead in the Complaint support a finding of actual knowledge on the part of Wells Fargo:

---

[5]    *Milligan v. Salamone*, 1:18-CV-327-RP (W.D. Tex. Aug 23, 2019 J Pitman).  Even if the panel in *DePuy* had purported to overrule the set of Fifth Circuit decisions acknowledging the existence of a knowing-participation claim under Texas law, the rule of orderliness would preclude it from doing so.  *See Gahagan v. United States Citizenship & Immigration Servs*., 911 F.3d 298, 302 (5th Cir. 2018) ("[T]hree-judge panels . . . abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting *en banc*.").

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                             Page **6**

a. Wells Fargo had actual knowledge that Pettit was not a lawyer license in the State of New Mexico and therefore not authorized to open the NM IOLTA Account[6] at inception. (Complaint ¶ 4, 29, and 50)

b. Wells Fargo had actual knowledge that as of the commencement of actual activity in May 2021 in the NM IOLTA Account, Pettit was not a lawyer licensed to practice law in the State of New Mexico. (Complaint ¶ 28-29, 38-42, 50 and Exhibits 1, 8, 9 and 22)

c. Wells Fargo had actual knowledge that the NM IOLTA Account was a lawyer's trust account. (Complaint ¶ 3, 28-29, 38-42 and Exhibits 1, 8, 9, and 22)

d. Wells Fargo had actual knowledge that the NM IOLTA Account received funds from the Plaintiffs, including the Kuenemanns, the Verstuyfts, and the Beyer Living Trust. (Complaint ¶ 41-44, 54-63 and Exhibits 24, 25, 32, and 33)

e. Wells Fargo had actual knowledge that the funds belonging to the Kuenemanns, the Verstuyfts, and the Beyer Living Trust were used to pay obligations of Pettit owing to Wells Fargo and/or Wells Fargo West. (Complaint ¶ 41-44, 54-63 and Exhibits 23, 24, 25, 31, 32, 33 and 36)

f. In addition to each of the foregoing, Wells Fargo had actual knowledge of the dozens of other events which federal regulations and regulators classify as Red Flags[7].  (Complaint ¶ 29-32, 35-44 and Exhibits 11, 21, 22, 27, 29, and 31)[8]

Additionally, Wells Fargo had actual knowledge that an Interest On Lawyers Trust Account exists to hold money that belongs to clients, and that the attorney – client relationship gives rise to a fiduciary relationship between the attorney and the client.  *See* *Willis v. Maverick*, 760 S.W.2.d 642, 645 (Tex. 1998).  Wells Fargo disregarded all of this

---

[6]   As defined in the Complaint

[7]   As defined in the Complaint

[8]   It is worth noting that Wells Fargo and Wells Fargo West direct this Court to the 11th Circuit case styled *Perlman v. Wells Fargo* as their "authority" for the proposition that "Red Flags" can't constitute or equal "notice" to Wells Fargo.  While the holding of the 11th Circuit did analyze the status of "Red Flags", its unpublished holding was based upon Florida law. *Perlman v. Wells Fargo Bank, N.A.*, 559 F. Appx. 988, 994 (11th Cir.) Unpublished opinions in the 11th Circuit are not binding precedent even in that Circuit.  11th Cir. R. 36-2.

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                                           Page **7**

knowledge for its own benefit and the benefit of Pettit, its "high net worth" customer.

11.     Prior to opening the IOLTA Account, Wells Fargo took steps to investigate whether or not Pettit could legally practice law in New Mexico.  *See* Complaint ¶ 4, 29, and 50; Complaint Exhibit 1.  As alleged in the Complaint, almost immediately after Pettit began using the NM IOLTA Account, he began to overdraft the account on a daily basis. *See* Complaint ¶ 43; Complaint Exhibit 23.  Wells Fargo complied with the New Mexico Rules by sending overdraft notifications to the Office of Disciplinary Counsel.  The overdraft notification provisions of the New Mexico Rules are specifically intended to prevent misappropriation by providing an early warning of improprieties in the handling of trust funds.  *See* Committee Commentary N.M.R. Gov. Disc. 17-204.  Wells Fargo, as a Leadership Circle New Mexico IOLTA depository, was aware of the requirement to provide these overdraft notifications, of which there were 176 discreet incidents, as plead in the Complaint.  Wells Fargo had actual knowledge that Pettit was misusing the NM IOLTA Account, including the misappropriation of the trust funds therein.  Thus, Plaintiffs have plead sufficient facts, which, when are accepted as true, state a claim to relief that is plausible on its face.

12.     Wells Fargo routinely allowed and assisted Pettit in making cash withdrawals from the IOLTA Accounts.  Such action is specifically prohibited under the New Mexico Rules.  *See* Complaint ¶ 43 and 49; Complaint Exhibit 17; *see also* N.M.R. Gov. Disc. 17-204 (A)(6).  Wells Fargo knew that Pettit was misappropriating fiduciary property when it allowed and assisted Pettit to withdraw cash in direct contravention of New Mexico's rules and regulations regarding the maintenance of IOLTA accounts.  That is, the actions taken by Wells Fargo, specifically the overdraft notices and assisting Pettit

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                                    Page **8**

with cash withdrawals in violation of the New Mexico Rules, demonstrates the fact that Wells Fargo had actual knowledge of the misappropriation of fiduciary property and, in fact, assisted Pettit in those efforts, including transfers which financially benefited Wells Fargo. *See* Complaint ¶ 27 and 36; Complaint Exhibit 31 and 36. Because Wells Fargo had actual knowledge and financially benefitted from the breach by Pettit, Wells Fargo can be held liable for the losses sustained by the Plaintiffs, including the Kuenemanns. *Wichita Royalty Co. v. City Nat. Bank of Wichita Falls*, 89 S.W. 2d 394, 400 (1935); *Texas Bank & Trust v. Helmcamp*, 506 S.W. 2d 667, 669 (1974) (*citing Wichita Royalty,* 89 S.W.2d at 400 (1935)).

13.     Contrary to the assertions of Wells Fargo, the Kuenemanns, along with the Beyer Living Trust and the Verstuyfts, have plead that Pettit, in addition to serving as the 1031 Exchange intermediary, provided the Kuenemanns with legal advice and representations—on which they relied—which extended beyond service as the "1031 Exchange Intermediary," giving rise to the fiduciary relationship that exists between lawyer and client irrespective of whether the representation is formally documented. *See* Complaint ¶ 1, 62.

14.     Wells Fargo and Pettit had a meeting of the minds to illegally open the NM IOLTA Account. *See* Complaint ¶¶19-20 and 24-29. Pettit and Wells Fargo acted together to open a trust account that was not authorized under applicable state law and to steal money belonging to the Plaintiffs from that account. The acts of theft directly and financially benefited Wells Fargo. Pettit and Wells Fargo, through its employees, had a meeting of the minds on the object of their actions or course of action which, as described in the Complaint, was to funnel as much money as possible to and through Wells Fargo

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                                 Page **9**

Bank for the ultimate benefit of Wells Fargo and Pettit.  Indeed, Wells Fargo itself stole money out of the NM IOLTA Account in the form of service charges and overdraft fees that Wells Fargo debited from the NM IOLTA Account—an account containing only trust funds—in violation of New Mexico law.  Additionally, Wells Fargo and Pettit agreed to use funds from the NM IOLTA Account to make payments on Pettit's personal mortgage held by Wells Fargo.  *See* Complaint ¶ 22-23, 72-73.

### C. Joint Tortfeasor Liability for Knowing Participation in a fraud is a recognized and viable cause of action under Texas Law.

15.     Wells Fargo relies on *DePuy* and the same faulty analysis regarding joint tortfeasor liability for knowing participation in the breach of a fiduciary duty to support its position that Texas does not recognize a cause of action for joint tortfeasor liability for knowing participation in a fraud.  Wells Fargo cites no other authority for the proposition that joint tortfeasor liability for knowing participation in the commission of a fraud is not a cognizable claim in Texas.

16.     As discussed below, Pettit has been held liable for perpetrating a fraud on the Verstuyft Plaintiffs.  The Kuenemanns have sufficiently pleaded the existence of a fraud by Pettit perpetrated with the knowing assistance of Wells Fargo, which is sufficient to state a legally cognizable and plausible claim.  Pettit and Wells Fargo acted together to open a trust account that was not authorized under applicable state law and which was used as the conduit to steal money belonging to the Kuenemanns and Verstuyft Plaintiffs, respectively, and from which both Pettit and Wells Fargo benefited.  The fraudulent acts of Pettit, which were known and knowable by Wells Fargo directly and financially benefited both Pettit and Wells Fargo.  Pettit and Wells Fargo, through its employees,

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                    Page **10**

had a meeting of the minds on the object of their actions or course of action which, as described in the Complaint, was to funnel as much money as possible to and through Wells Fargo Bank for the ultimate benefit of Wells Fargo and Pettit.  Wells Fargo itself stole money out of the NM IOLTA Account, including money belonging to the Kuenemanns and the Verstuyft Plaintiffs, in the form of service charges and overdraft fees that Wells Fargo debited from the NM IOLTA Account, and payment to Wells Fargo and/or Wells Fargo West for the 555 Argyle Mortgage.  *See* Complaint ¶¶72-73.  Wells Fargo had actual knowledge that the NM IOLTA Account was a trust account that contained only trust funds.

**D. Pettit has been held liable for breach of fiduciary duty, fraud, negligence, and violation of the Texas Theft Liability Act.**

17.     Contrary to the representations of Wells Fargo, there is no speculation at this juncture that Pettit is liable for the breach of his fiduciary duties, fraud, negligence, and violation of the Texas Theft Liability Act as to the Verstuyft Plaintiffs, as the Bankruptcy Court in CP&A Adversary made such a determination Adversary Docket No. 94.[9]

Therefore, default is entered against the Defendant as authorized by Bankruptcy Rule 7055(b)(2) as to **liability only**. The Court will set a hearing on damages when Plaintiff files its motion for default judgment.

18.     The only matter for determination by the Bankruptcy Court regarding the liability of Pettit is the calculation of the money damage award, including punitive

---

[9]     See Exhibit 2 – Court's Entry of Default.

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                             Page **11**

damages, which are properly assessable against Pettit.  The foundational element—the breach of a fiduciary duty—is established.

**E.  Wells Fargo had a duty to the Kuenemanns and the Verstuyft Plaintiffs.**

19.   Wells Fargo argues that it had *no* duty to the Kuenemanns, and therefore the Kuenemanns cannot bring a claim for negligence against Wells Fargo.  Wells Fargo contends that a bank has no duty to its customers, much less the Kuenemanns, as beneficiaries of express trust held by Wells Fargo.  Just as Judge Gargotta concluded in the Bankruptcy 12(b) Ruling, this argument lacks merit.

20.   Specifically, in _Wichita Royalty Co. v. City Nat'l Bank_, the Texas Supreme Court held that where a depositor maintains a commingled bank account, which is partly his personal fund and partly a trust fund and the bank has notice of such fact, it is the bank's duty to treat the whole account as a trust fund.  _Wichita Royalty Co. v. City Nat'l Bank_, 89 S.W.2d 394, 399 (1935).  Furthermore, the Court held that the City National Bank (the "Bank"), having aided the trustee in making the transfers and having permitted him to transfer funds for personal purposes, including payments of his debts to the Bank, participated in his wrongdoing, *as a matter of law*.  *See also* _Texas Bank & Trust v. Helcamp_, 506 S.W. 2d 667, 669 (Tex. 1974).  Knowing of these transactions, the Bank was put upon inquiry notice concerning the trustee's purpose.  The Bank knew as a matter of law that in the use of the powers vested in the trustee, however broad, the trustee had no authority to use the trust funds and defraud the trust estate.  _Wichita Royalty_, 89 S.W.2d at 399.

21.   That is precisely the case here.  Wells Fargo, after overruling its own internal requirements for the opening of an IOLTA account and enabling Pettit to open

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                    Page **12**

the NM IOLTA Account, assisted Pettit in making numerous transfers out of the NM IOLTA Account to his personal account for the purposes of paying a host of unauthorized expenditures, including Pettit's mortgage debt held by Wells Fargo.  *See* Complaint ¶ 4, 28-29, 38-42, 50.  As such, applying the analysis in <u>*Wichita Royalty*</u> and <u>*Helcamp*</u>, once Wells Fargo had notice of the misuse of the fiduciary property, a duty arose to take action on behalf of Wells Fargo to the beneficiaries of the trust account, including the Kuenemanns and the Verstuyft Plaintiffs.  Pursuant to the Wells Fargo Deposit Account Agreement, Wells Fargo had the absolute right to close the NM IOLTA Account at any time, but chose to keep it open in order to permit Pettit to continue the malfeasance that has since landed him in prison.  *See* Complaint ¶ 5, 46.  Accordingly, the Kuenemanns have plead facts that establish a duty owed by Wells Fargo.

**F.     Wells Fargo and Wells Fargo West Stole the Plaintiffs' Money and had the Requisite Intent to do so.**

22.     Wells Fargo and Wells Fargo West claim that they did not steal any of the Kuenemanns' money.  Wells Fargo West claims that it did not steal any of the Verstuyft Plaintiffs' money.  However, neither protestation is accurate.  Wells Fargo knew that all funds in the NM IOLTA Account belonged to Pettit's clients and CP&A.  Yet, on 176 occasions, Wells Fargo debited the NM IOLTA Account for NSF Fees and overdraft charges in direct contravention of the New Mexico Rules governing IOLTA accounts as well as its own policy and procedures related to IOLTA accounts.  *See* Complaint ¶ 43; Complaint Exhibit 23.  Wells Fargo West is an affiliate of Wells Fargo.  To the extent that the 555 Argyle Mortgage payments were actually transferred by Wells Fargo to Wells Fargo West, Wells Fargo acted as an agent of Wells Fargo West, facilitating transfers 29

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                        Page **13**

times from the NM IOLTA Account into Pettit's Personal Account to cover payments on the 555 Argyle Mortgage, more often than not when the balance in Pettit's Personal Account was overdrawn.  *See* Complaint ¶ 23, 72; Complaint Exhibit 5 and 36.

23.     Under Texas law, a "conscious desire" to deprive a plaintiff of their property is not necessary for liability to be imposed under the Texas Theft Liability Act.  That is, all that is required for liability to be imposed under that statute is that the defendant intended to deprive the plaintiff of its property.  *See* Tex Pen. Code § 31.03(a); *Rowland v. State*, 744 S.W.2d. 610, 613 (Tex. Crim. App. 1988).  Texas law recognizes that the intent to deprive can be inferred from words or actions of the defendant.  *McCullogh v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 907 (Tex. App.—Dallas 2014).

24.     Pettit and Wells Fargo (and as applicable, Wells Fargo West), acting in concert and individually, appropriated the funds—fiduciary property by virtue of the deposit of those funds into the Wells Fargo Accounts—with the intent to deprive each of the Plaintiffs of the funds through discreet transactions occurring between April 2021 and May 2022.  *See* Complaint ¶ 56-57 and 59-60.  Each of these transfers are reflected in Exhibits 32 and 33 to the Complaint.  The transactions include the 176 discreet instances of the "payment" of NSF Fees charges and collected by Wells Fargo from the fiduciary funds held in the NM IOLTA and the 29 discreet transfers out of the NM IOLTA Account to pay the personal mortgage of Pettit owing to Wells Fargo and/or Wells Fargo West. Accordingly, Plaintiffs have plead a set of facts that constitute a plausible claim for liability to be imposed under the Texas Theft Liability Act against both Wells Fargo and Wells Fargo West.

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                              Page **14**

## CONCLUSION

The allegations made by the Kuenemanns and the Verstuyft Plaintiffs, when viewed in light of the totality of the Complaint, state legally cognizable claims that are plausible, factually detailed, and have previously been determined to be sufficiently plead under the terms of the Bankruptcy 12(b) Ruling.   Following applicable Fifth Circuit authority, the challenged claims of the Kuenemanns and the Verstuyft Plaintiffs should be allowed and, in remaining true to the Fifth Circuit's admonition that the Court's task "is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success to proceed to trial," this Court should deny the 12(b) Motion in all things.  *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).

## PRAYER

WHEREFORE, PREMISES CONSIDERED Plaintiffs respectfully request that the Court deny the 12(b) Motion, together with such other and further relief at law or in equity, to which Plaintiffs may be justly entitled including allowing Plaintiffs to amend their complaint.

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                          Page **15**

Respectfully submitted,

LUTTRELL + CARMODY LAW GROUP
One International Centre
100 N.E. Loop 410, Suite 615
San Antonio, Texas 78216
Tel.   210.426.3600
Fax   210.426.3610
luttrell@lclawgroup.net

By: /s/ Leslie M. Luttrell
    Leslie M. Luttrell
    State Bar No. 12708650

**ATTORNEYS FOR ROBIN AND MARK VERSTUYFT AND GORDON AND WENDY KUENEMANN**

VILLA & WHITE, LLP
One International Centre
100 N.E. Loop 410, Suite 615
San Antonio, Texas 78216
Tel.  - 210.225.4500
Fax.   210.212.4649
treywhite@villawhite.com

By: /s/ Morris E. "Trey" White III
    Morris E. "Trey" White III
    State Bar No. 24003162

**ATTORNEYS FOR THE BEYER LIVING TRUST**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing document was served on the following by electronic service the 8th day of April, 2024.

**Attorneys for Wells Fargo, N.A. and Wells Fargo National Bank West**

Thomas M. Farrell
MCGUIREWOODS LLP
845 Texas Avenue, Suite 2400
Houston, TX 77002
Email: tfarrell@mcguirewoods.com

Jarrod D. Shaw
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Email: jshaw@mcguirewoods.com

Nellie E. Hestin
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Email: nhestin@mcguirewoods.com

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion          Page **16**

Alexander M. Madrid
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Email: amadrid@mguirewoods.com


<u>/s/ Leslie M. Luttrell</u>
Leslie M. Luttrell

No. 24-229
*Verstuyft, et al v. Wells Fargo Bank, N.A.*
Response to Rule 12(b)(6) Motion                                                 Page **17**