**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MARK VERSTUYFT, ROBIN VERSTUYFT, THE BEYER LIVING TRUST, GORDON KUENEMANN, and WENDY KUENEMANN | § § § § | |
| | § | Case No. 5:24-cv-229-JKP |
| Plaintiffs, | § § | |
| vs. | § § | |
| WELLS FARGO BANK, N.A. and WELLS FARGO NATIONAL BANK WEST | § § § § | |
| Defendants. | § § | |

**WELLS FARGO BANK, N.A. AND WELLS FARGO NATIONAL BANK WEST'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.  ARGUMENT ...................................................................................................1

    A.  Knowing Participation In Breach Of A Fiduciary Duty Is An Equitable Claim .....1

    B.  The Absence of Authority Addressing "Knowing Participation in Fraud" Supports *Wells Fargo's* Position, Not the Kuenemanns' ........................................2

    C.  The Kuenemanns Fail to Allege Wells Fargo *Actually Knew* Pettit Owed Them A Fiduciary Duty ................................................................................3

    D.  The Kuenemanns Fail to Allege Wells Fargo *Actually Knew* Pettit Breached His Alleged Fiduciary Duty ................................................................................4

    E.  The Kuenemanns' Attempt to Rely on the Default Entered Against Pettit in a Separate Proceeding Fails ...............................................................................5

    F.  The Kuenemanns' Negligence Claim Fails Because Wells Fargo Did Not Owe Them a Duty................................................................................................8

    G.  Plaintiffs Fail to Plead a "Conscious Objective" to Steal Their Property................9

    H.  The Bankruptcy Stipulation Fully Permits Wells Fargo's Motion ........................10

II.  CONCLUSION...............................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bowers v. Trinity Groves, LLC*,
  No. 3:21-CV-0411, 2021 WL 3710564 (N.D. Tex. Aug. 20, 2021) ................................10

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
  49 F.4th 520 (5th Cir. 2022), *cert. denied,* 143 S. Ct. 2457 (2023)...................................10

*Charboneau v. Box*,
  No. 4:13-CV-678, 2017 WL 1159765 (E.D. Tex. Mar. 29, 2017) .....................................1

*Diakiw v. Stites Mgmt., L.L.C.*,
  - S.W.3d, No. 14-22-00439-CV, 2023 WL 8041403 (Tex. App. Nov. 21, 2023)..............2

*ERI Consulting Engineers, Inc. v. Swinnea*,
  318 S.W.3d 867 (Tex. 2010).............................................................................................1

*Escalante v. Lidge*,
  34 F.4th 486 (5th Cir. 2022) .............................................................................................6

*Frow v. De La Vega*,
  82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872) .....................................................................6

*Heinert v. Bank of Am. N.A.*,
  835 F. App'x 627 (2d Cir. 2020) .......................................................................................4

*In re DePuy Orthopaedics*,
  888 F.3d 753 (5th Cir. 2018) .......................................................................................1, 3

*In re Fitch*,
  349 B.R. 133 (Bankr. N.D. Tex. 2006), *as amended* (Aug. 2, 2006) ................................8

*In re Keaty*,
  397 F.3d 264 (5th Cir. 2005) ............................................................................................7

*In re Kosmos Energy Ltd. Secs. Litig.*,
  955 F. Supp. 2d 658 (N.D. Tex. 2013) ..............................................................................3

*In re Rose*,
  No. 4:19-CV-98, 2021 WL 3795421 (E.D. Tex. Aug. 25, 2021)....................................10

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
  160 S.W.2d 509 (Tex. 1942)..............................................................................................1

*Lewis v. Lynn*,
    236 F.3d 766 (5th Cir. 2001) ........................................................................6

*Matter of Gober*,
    100 F.3d 1195 (5th Cir. 1996) ......................................................................8

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) ........................................................................2

*Milligan, Tr. for Westech Cap. Corp. v. Salamone*,
    No. 1:18-CV-327-RP, 2019 WL 1208999 (W.D. Tex. Mar. 14, 2019)...........................2

*New York Life Ins. Co. v. Brown*,
    84 F.3d 137 (5th Cir. 1996) ........................................................................6

*Owens v. Comerica Bank*,
    229 S.W.3d 544 (Tex. App. 2007) ................................................................8

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)....................................................................................7

*Paskenta Band of Nomlaki Indians v. Umpqua Bank*,
    846 F. App'x 589 (9th Cir. 2021) ................................................................4

*Paulsen v. Texas Equal Access to Justice Foundation*,
    23 S.W.3d 42 (Tex. App. 1999)..................................................................8

*Perlman v. Wells Fargo Bank, N.A.*,
    559 F. App'x. 988 (11th Cir. 2014) ............................................................4

*Rosemann v. St. Louis Bank*,
    858 F.3d 488 (8th Cir. 2017) ......................................................................4

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) ......................................................................7

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)....................................................................................7

*Test Masters Educ. Servs. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ......................................................................7

*Texas Bank & Tr. in Wichita Falls v. Helmcamp*,
    506 S.W.2d 667 (Tex. Civ. App. 1974)......................................................9

*Texas Commerce Bank-New Braunfels v. Townsend*,
    786 S.W.2d 53 (Tex. App. 1990, writ denied)............................................8

*Torrington Co. v. Stutzman,*
    46 S.W.3d 829 (Tex. 2000)..................................................................8

*United States v. El Paso Co.,*
    682 F.2d 530 (5th Cir. 1982) ............................................................4

*Wichita Royalty Co. v. City Nat'l Bank,*
    89 S.W.2d 394 (Tex. 1935)..................................................................9

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969)................................................................................7

## STATUTES & REGULATIONS

Tex. Penal Code § 6.03(a)........................................................................9

## OTHER AUTHORITIES

N.M.R. Gov. Bar. 24-109 (C) ................................................................5

## I.     ARGUMENT

### B.     Knowing Participation In Breach Of A Fiduciary Duty Is An Equitable Claim

Both the Kuenemanns and Wells Fargo[1] agree that claims for aiding and abetting are barred by *In re DePuy Orthopaedics*, 888 F.3d 753 (5th Cir. 2018).   Thus, the parties' only dispute is whether the Kuenemanns' "knowing participation" claims are simply an aiding-and-abetting claim in disguise (in which case they must be dismissed under *DePuy*), or whether they have properly asserted the equitable claim of "knowing participation in the breach of fiduciary duty" recognized in *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).   Notably, the Kuenemanns do not dispute that "knowing participation in the breach of fiduciary duty," as set forth in *Kinzbach*, is confined to actions at **equity.**   Nor do they dispute that they are ***not*** bringing an equitable claim and, in fact, are seeking monetary damages.[2]   These two concessions end the analysis: the Kuenemanns' claim is not for "knowing participation" as set forth in *Kinzbach*, but rather an impermissible attempt to bring an aiding and abetting claim by another name.[3]

The Response cites a variety of cases for the proposition that claims for knowing participation are recognized.   (*See* Resp. ¶ 8).   These cases only confirm the point: ***no court has ever expressly held that "knowing participation" can be extended outside of actions at equity to encompass actions seeking damages.***   *Cf., e.g.*, *ERI Consulting Engineers, Inc. v. Swinnea*, 318

---

[1] Capitalized terms and acronyms have the same meaning as in Wells Fargo's moving brief.

[2] By failing to address these arguments, the Kuenemanns concede them.   *See Charboneau v. Box*, No. 4:13-CV-678, 2017 WL 1159765, at *13 (E.D. Tex. Mar. 29, 2017) ("[A] plaintiff's failure to brief an argument in the plaintiff's response to a motion to dismiss generally results in waiver of such argument.").

[3] To the extent the Kuenemanns contend the Fifth Circuit's decision in *DePuy* permits them to simply restyle an aiding-and-abetting claim as knowing participation, such an argument would make little sense.   There would be no reason for the Fifth Circuit to hold that "no such claim exists in Texas" if what it meant was just that the claim was *mislabeled.*   888 F.3d at 782.

S.W.3d 867, 881 (Tex. 2010) (explaining *Kinzbach* permits "**equitable remedies** to protect relationships of trust") (emphasis added); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (dismissing claim for knowing participation, and affirming dismissal of equitable claims); *Milligan, Tr. for Westech Cap. Corp. v. Salamone*, No. 1:18-CV-327-RP, 2019 WL 1208999, at *1 (W.D. Tex. Mar. 14, 2019) (stockholder derivative action seeking equitable remedies).  As the Court of Appeals of Texas recently explained, "if a third party knowingly participates in a defendant's breach of a fiduciary duty . . . the plaintiff has the **same equitable remedies** against the defendant and the third party based upon this breach." *Diakiw v. Stites Mgmt., L.L.C.*, - S.W.3d, No. 14-22-00439-CV, 2023 WL 8041403, at *12 (Tex. App. Nov. 21, 2023) (emphasis added).  The elements of the "knowing participation" cause of action do not even *include* causation or damages—the latter thus **cannot** be sought through that claim.  (Mot. at 8.)

Nor did the Kuenemanns allege in their Complaint, or in their Response, that Wells Fargo committed a tort independent of Pettit.  As Wells Fargo previously explained, *Kinzbach* involved a situation in which two parties committed *independent* torts and the court fashioned an equitable remedy because it was impossible to determine, under those facts, whether the plaintiff had suffered damages as a result of either defendant's conduct.  (*See* Mot. at 7 & n.5.)  The remedy that the *Kinzbach* court devised simply has no application here.

### C.   The Absence of Authority Addressing "Knowing Participation in Fraud" Supports *Wells Fargo's* Position, Not the Kuenemanns'

Wells Fargo's Motion noted that "**no Texas state court has ever recognized a cause of action for 'knowing participation in fraud.'**" *See* Mot. at 9 (emphasis in original).  In response, the Kuenemanns cite no cases recognizing this cause of action.  Nor do they point to any compelling justification for the creation of a new cause of action.  Instead, they flip the tables and criticize Wells Fargo for not citing to authority holding the cause of action does not exist.  (Resp.

¶ 15.)  Wells Fargo's lack of citations has a much easier explanation than the Kuenemanns': parties do not bring causes of action not recognized by Texas courts.  Nor do the Kuenemanns get to create causes of action until they encounter contrary authority.  Federal courts sitting in diversity cannot "fashion[] novel causes of action not yet recognized by the state courts." *DePuy*, 888 F.3d at 781.

### D.     The Kuenemanns Fail to Allege Wells Fargo *Actually Knew* Pettit Owed Them A Fiduciary Duty

Even assuming "knowing participation" exists as a claim for damages, the Kuenemanns fail to plead it here.  The Response asserts, in conclusory fashion, that Wells Fargo must have had knowledge that Pettit owed the Kuenemanns a fiduciary duty because their funds were deposited into an IOLTA account, and IOLTA accounts are for client funds.  (*See* Resp. ¶ 10.)  But the mere deposit of funds into an IOLTA does not create a fiduciary duty—much less give rise to actual knowledge on the bank's part that one exists.  (*See* Mot. at 11.)  Nor could the deposit of funds into the N.M. IOLTA account have given Wells Fargo actual knowledge of a fiduciary duty owed specifically to the Kuenemanns, as the Kuenemanns never allege that Wells Fargo knew it was the Kuenemanns' funds which were deposited.  To the contrary, the Complaint alleges the Kuenemanns' funds were deposited at Wells Fargo via a wire transfer from Stewart Title Company, with the Kuenemanns *never* identified.  (*See* Dkt. No. 1 (Compl.) ¶ 61.)

The Complaint does not even allege Pettit in fact owed the Kuenemanns a fiduciary duty (much less that Wells Fargo had actual knowledge of that duty).  In response, the Kuenemanns allege for the first time that Pettit "provided the Kuenemanns with legal advice and representations."  (Resp. ¶ 13.)  But the Complaint omits any such allegation, and "a plaintiff may not amend its complaint in response to a motion to dismiss." *In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013).  Plaintiffs allege Pettit held himself out to them as a qualified intermediary for 1031 exchanges, which required him to be "disinterested" and "***not***

[their] lawyer[.]" (Compl. ⁋ 16 (emphasis added).)  The only advice the Kuenemanns alleged was regarding the "the 1031 Exchange duration, tax benefits, and other opportunities." (Compl. ¶ 62.) This advice could not have created a fiduciary duty.  *See United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("[T]he preparation of tax returns is generally not legal advice.").

### E.     The Kuenemanns Fail to Allege Wells Fargo *Actually Knew* Pettit Breached His Alleged Fiduciary Duty

Not only did the Kuenemanns fail to plausibly allege that Wells Fargo actually knew Pettit owed them a fiduciary duty, they also failed to allege that Wells Fargo actually knew that (alleged) duty was being breached.  The Response asserts Wells Fargo actually knew Pettit was breaching his duty to the Kuenemanns because of alleged "red flags" generated by the activity in the N.M. IOLTA account, and because Pettit violated the New Mexico Rules of Professional Conduct. (Resp. ⁋ 12.)  Neither assertion holds water.

First, courts consistently reject the Kuenemanns' theory that asserted "red flags" related to account activity plausibly plead a bank's actual knowledge that the accountholder is engaged in tortious conduct.  *See, e.g.*, *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) ("[Plaintiffs] point to the high number of accounts opened by [the account holders], their shuffling and comingling of investor funds, and [one account holder's] questioning of [a bank employee] ahead of bank inspections about whether the Individual Defendants were 'alright.' Such 'red flags,' however, are not the same as actual knowledge."); *Paskenta Band of Nomlaki Indians v. Umpqua Bank*, 846 F. App'x 589, 590 (9th Cir. 2021) (holding allegations of "various irregularities requir[ing] further investigation by Umpqua Bank" were not sufficient to allege actual

knowledge).[4]   Additionally, the Kuenemanns do not allege that any of the asserted "red flags" were unique to transactions which could be linked to their funds.  *See Rosemann v. St. Louis Bank*, 858 F.3d 488, 498 (8th Cir. 2017) ("even if St. Louis Bank knew that Sigillito had fiduciary obligations to some funds in the [IOLTA] account," the wrongful conduct might not have involved those specific funds).

Second, *Pettit's* alleged violation of the New Mexico Rules of Professional Conduct does not provide *Wells Fargo* with actual knowledge Pettit was breaching a fiduciary duty.  The rules themselves state a violation does ***not*** "create any presumption in such a case that a legal duty has been breached." N.M. R. Prof. Cond. ("Scope") ("The rules are designed to provide guidance to lawyers…."). Even if Wells Fargo could be said to have been aware of the Rule concerning who may serve as a signatory to an IOLTA account, and even if it could be said to be aware that Pettit was violating that Rule, that would say ***nothing*** about whether Wells Fargo had actual knowledge he owed a duty or was breaching that duty. This stands to reason given that IOLTA accounts can hold client and non-client funds. N.M.R. Gov. Bar. 24-109 (C) ("a lawyer or law firm may establish one or more . . . trust accounts for the deposit of a client's or third person's funds . . . .")[5]

### F.   The Kuenemanns' Attempt to Rely on the Default Entered Against Pettit in a Separate Proceeding Fails

Incredibly, the Kuenemanns assert the Bankruptcy Court has already established that Pettit in fact owed them a fiduciary duty and breached that duty and "been found liable for breach of

---

[4] The Response criticizes Wells Fargo's citation to *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x. 988, 994 (11th Cir. 2014), because it is unpublished. Yet *Perlman's* holding, that red flags cannot prove the required actual knowledge, has been repeatedly endorsed by published decisions.

[5] Notably, the Kuenemanns fail to even address Wells Fargo's argument that knowing participation requires proof the defendant substantially assisted the underlying tortfeasor, which Plaintiffs failed to allege here. (*See* Mot. at 17-18.) Their concession of this argument independently warrants dismissal of the knowing participation claims.

fiduciary duty, fraud, negligence, and violation of the [TTLA]"—intimating, it seems, that such an adjudication would be binding here.  (Resp. § D.)  That is simply not the case.

The Trustee, Verstuyfts, and Beyer Living Trust named Pettit as a co-Defendant in the Bankruptcy Action.  Pettit did not answer their complaint, and thus an entry of default as to liability only was entered against him.   An entry of default is ***not*** equivalent to an entry of default judgment—a point the Bankruptcy Court itself made clear.  *See* Resp. Ex. 2 ("the Court will set a hearing on damages when Plaintiff files its motion for default judgment"); *see also New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (explaining difference between default, entry of default, and default judgment).  Nor *can* such a judgment be entered so long as Wells Fargo remains a defendant in that Action, as "doing so would conflict with the position taken by another defendant."  *Escalante v. Lidge*, 34 F.4th 486, 495 (5th Cir. 2022) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)).  Indeed, rather than binding Wells Fargo to the entry of default, Fifth Circuit precedent allows *Pettit* to benefit from a determination in Wells Fargo's *favor* if it litigated the Bankruptcy Action to judgment.  *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (dismissing claims against defaulting defendants when their co-defendants demonstrated plaintiffs had not pled the required elements for that cause of action).

In point of fact, the sole remaining claims against Wells Fargo in the Bankruptcy Action are for avoidance of a transfer (which the parties recently settled)[6] and certain tort claims brought by the Trustee that have been compelled to arbitration (and are stayed).[7]  Wells Fargo is thus no longer an active participant in the Bankruptcy Action—and *could not* participate without moving to vacate the stay entered in light of the Court's order compelling arbitration.  Any attempt to argue

[6] *See* ECF No. 1311, Dkt. No. 22-50591-cag.

[7] *See* ECF No. 120, Dkt. 23-5039-cag.

Wells Fargo could be bound in *this* action based on a future default judgment entered in the Bankruptcy Action, where it is no longer an active party, is plainly wrong.  "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.").

In fact, such a judgment would have absolutely no effect on this case.  It would certainly not alleviate Plaintiffs from their burden of pleading—and, if this case proceeds, proving—each element of their claims against Wells Fargo (*including* the underlying tortious conduct Pettit allegedly committed).  As a threshold matter, the Kuenemanns are not parties to the Bankruptcy Action and thus res judicata is inapplicable on its face.  *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) ("'[T]he test for res judicata has four elements: (1) the parties are identical or in privity . . .'" (quoting *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).  And, as noted, Wells Fargo cannot participate in the Bankruptcy Action given the Court's order compelling the claims against it to arbitration.  As the Supreme Court has explained, "a person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (citation omitted).

And issue preclusion cannot be invoked for another reason: Pettit never actually litigated whether he breached a fiduciary duty or committed *any* of the alleged tortious conduct at issue here.  For issue preclusion to apply, the issue must have been "actually litigated:" "raised, contested

by the parties, submitted for determination by the court, and determined." *In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005). Pettit's liability was never contested in the Bankruptcy Action; instead, it was determined because he did not answer. "[N]o-answer default judgments fail to meet the 'actually litigated' prong of the issue preclusion test under Texas law." *In re Fitch*, 349 B.R. 133, 142 (Bankr. N.D. Tex. 2006), *as amended* (Aug. 2, 2006); *see also Matter of Gober*, 100 F.3d 1195, 1204 (5th Cir. 1996) ("Courts generally hold that no-answer default judgments fail to meet the 'actually litigated' prong of the issue preclusion test.").

### G.     The Kuenemanns' Negligence Claim Fails Because Wells Fargo Did Not Owe Them a Duty

The Kuenemanns fail to plead a claim for negligence because they were not customers of Wells Fargo and "a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship." (Mot. at 18 (quoting *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App. 2007)).) In their Response, the Kuenemanns argue there is a duty "to take action. . . [for] the beneficiaries of the trust account." (Resp. ¶ 21.) But this duty arises due to the relationship between the *trustee* and the beneficiaries of the trust account. Wells Fargo was not a trustee of the N.M. IOLTA account. While the *lawyer* holds the funds in trust, the account is a general account— a bank does not take on any special duties to non-customers simply because an IOLTA account is opened with it. *See Texas Commerce Bank-New Braunfels v. Townsend*, 786 S.W.2d 53, 54 (Tex. App. 1990, writ denied) (attorney's trust account, denominated an "Escrow Account," was a general account under Texas law); *Paulsen v. Texas Equal Access to Justice Foundation*, 23 S.W.3d 42, 47 (Tex. App. 1999) (recognizing the distinction between general and special accounts and noting that a"[lawyer's] contract with his bank establishing an IOLTA account expressly states that it is a general account."); *see also Torrington Co. v. Stutzman,* 46 S.W.3d 829,

837 (Tex. 2000) ("Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances.").

The Kuenemanns rely on *Wichita Royalty Co. v. City Nat'l Bank*, 89 S.W.2d 394 (Tex. 1935) and *Texas Bank & Tr. in Wichita Falls v. Helmcamp*, 506 S.W.2d 667 (Tex. Civ. App. 1974). (Resp. ¶ 20.) Neither concerned whether a bank owes a duty to non-customers. In *Wichita,* a bank creditor accepted checks for payment drawn from funds held in a trust account. *See* 89 S.W.2d at 399. The Court held the bank "ought to refuse the tender of trust credit in payment of a personal debt of the trustee," and because it failed to do so, the transactions could be repudiated by the trust. *Id.* at 402-03. This holding has no application here. In *Texas Bank*, the appellate court reversed a decision holding a bank responsible for failing to stop a co-trustee's personal use of trust funds. *See* 506 S.W.2d at 669. The Court did not address whether a duty was owed to a noncustomer, but examined what information could be imputed to the bank, as the co-trustee was also the bank's president. *Id.* The Court *rejected* an argument that the bank was liable because it knew that "trust funds were in [the co-trustee's] personal account or possession," as the bank was "entitled to believe that [the co-trustee] would use the trust funds for proper purposes. *Id.* at 670.

## H.    Plaintiffs Fail to Plead a "Conscious Objective" to Steal Their Property

The Wells Fargo entities seek to dismiss two components of Plaintiffs' TTLA claims: (1) the Kuenemanns' TTLA claim against Wells Fargo, and (2) the Plaintiffs' TTLA claims against WF West. Plaintiffs object to the requirement that a TTLA claim requires alleging a "conscious desire" to deprive the plaintiff of their property. (Resp. ¶ 23.) They assert all that is required is that "the defendant intended to deprive the plaintiff of its property." *Id.* But "intent" is expressly defined by statute to mean the *"**conscious objective** or desire to engage in the conduct or cause the result."* Tex. Penal Code § 6.03(a) (emphasis added).

Plaintiffs claim this conscious objective is shown because Wells Fargo collected NSF Fees and WF West accepted payment on Pettit's mortgage.[8]  (Resp. ¶ 24.)  But "[a] complaint cannot survive a motion to dismiss by stating facts merely consistent with liability."  *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022), *cert. denied,* 143 S. Ct. 2457 (2023) (internal quotations and citation omitted).  Both of Plaintiffs' assertions can be explained by an innocent intent—collecting the fees and payments owed to the Wells Fargo entities.  Plaintiffs allege no facts which would allow this Court to infer the Wells Fargo entities had the conscious desire to deprive Plaintiffs of their property.  *See In re Rose*, No. 4:19-CV-98, 2021 WL 3795421, at *13 (E.D. Tex. Aug. 25, 2021) (reversing bankruptcy court's judgment on TTLA claim as there was no evidence of intent to deprive the plaintiff).

## I.       The Bankruptcy Stipulation Fully Permits Wells Fargo's Motion

Finally, Plaintiffs accuse Wells Fargo of violating the Bankruptcy Action Stipulation by moving to dismiss the Kuenemanns' claims and the TTLA claim against WF West.  But the Kuenemanns were not parties to, or even contemplated by, the Stipulation—Wells Fargo thus did not waive its right to contest these brand-new Plaintiffs' claims.  Moreover, the Stipulation expressly provides that WF West could challenge any new claim against it.[9]

## II.      CONCLUSION

Wells Fargo respectfully requests that the Court dismiss the Kuenemanns' claims against it and WF West requests that the Court dismiss all claims against it.

---

[8] Plaintiffs also argue Wells Fargo acted as an agent of WF West in facilitating the transfers. (Resp. ¶ 22.)  But they do not allege any facts supporting this argument.  *See Bowers v. Trinity Groves, LLC*, No. 3:21-CV-0411, 2021 WL 3710564, at *3 (N.D. Tex. Aug. 20, 2021) (dismissing TTLA claim for failure to plead facts sufficient to show an agency relationship).

[9] *See* Dkt. 13-1 ¶ 5 ("Except as provided in paragraph 4 [other claims], Defendants reserve all rights to respond to any claims asserted against Wells Fargo National Bank West in the District Court, including through a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.").

Dated: April 15, 2024

Respectfully submitted,

*/s/ Thomas Farrell*
Thomas Farrell (Id. 06839250)
MCGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Phone: (713) 571-9191
E-Mail: tfarrell@mcguirewoods.com

Jarrod D. Shaw (*pro hac vice*)
Nellie E. Hestin (*pro hac vice*)
Alexander M. Madrid (*pro hac vice*)
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Phone: (412) 667-7907
E-Mail: jshaw@mcguirewoods.com
        nhestin@mcguirewoods.com
        amadrid@mcguirewoods.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

## CERTIFICATE OF CONFERENCE

Wells Fargo and WF West have complied with the Standing Order in Civil Cases Assigned to Judge Jason Pulliam.  On March 15, 2024, undersigned counsel conferred with opposing counsel, via telephone, regarding Wells Fargo and WF West's intent to file a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the basis for doing so.  That same day undersigned counsel sent written notification to opposing counsel, via electronic mail, informing them of their right to amend the complaint.  Plaintiffs did not timely file a notice of intent to amend their complaint.

*/s/ Thomas Farrell*
Thomas Farrell

## CERTIFICATE OF SERVICE

I hereby certify this document filed through the ECF system will be (1) sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 15, 2024, and (2) sent to the attorneys listed below by E-mail.

*/s/ Thomas Farrell*
Thomas Farrell

Leslie M. Luttrell
**Luttrell + Carmody Law Group**
100 N.E. Loop 410
Suite 615
San Antonio, TX 78216
(210)426-3600
Fax : (210)426-3610
Email: luttrell@lclawgroup.net

Morris E. White, III
**Villa & White LLP**
1100 NW Loop 410, Ste. 802
San Antonio, TX 78213
(210) 225-4500
Fax : (210) 212-4649
Email: treywhite@villawhite.com