**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**MARK VERSTUYFT, ROBIN**
**VERSTUYFT, GORDON KUENE-**
**MANN, WENDY KUENEMANN,**
**EARL BEYER, KENNETH BEYER,**

        *Plaintiffs,*

**v.**

**WELLS FARGO BANK N.A., WELLS**
**FARGO NATIONAL BANK WEST,**

        *Defendants.*

        **Case No. 5:24-CV-00229-JKP**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Wells Fargo Bank N.A. and Wells Fargo National Bank West's ("Defendants") Motion to Dismiss, (*ECF No. 116*). Plaintiffs Mark Verstuyft, Robin Verstuyft, Gordon Kuenemann, Wendy Kuenemann, Earl Beyer, and Kenneth Beyer ("Plaintiffs") filed a Response, (*ECF No. 118*), to which Defendants filed a Reply, (*ECF No. 120*). Also before the Court is Plaintiffs' Motion to Strike, (*ECF No. 117*), which is fully briefed, (*see ECF No. 119*), and therefore ripe for ruling. Upon consideration, Plaintiffs' Motion to Strike Defendants' Motion to Dismiss, (*ECF No. 117*), will be **DENIED**. Defendants' Motion to Dismiss, (*ECF No. 116*), will be **GRANTED-IN-PART AND DENIED-IN-PART.**

## BACKGROUND

This case arises out of the misuse of an Interest on Lawyers' Trust Account ("IOLTA") by attorney Christopher John Pettit ("Pettit"). *See, generally, ECF No. 110*. As a result of the misuse, Pettit stole millions of dollars from former clients, including Plaintiffs. *Id.*

I.    **The Adversary Proceeding in the Bankruptcy Court**

This case originated on May 2, 2023, when Plaintiffs Mark Verstuyft, Robin Verstuyft, and the Beyer Living Trust—along with Eric B. Terry (Chapter 11 Trustee)—filed their Original Complaint against Defendants Wells Fargo Bank N.A—along with Pettit—in Adversary Case No. 23-05039 in the Western District of Texas' Bankruptcy Court. *See* Adversary Case No. 23-05039 at *ECF No. 1* (Original Complaint). These underlying plaintiffs later added Defendant Wells Fargo National Bank West. *Id.* at *ECF No. 66* (Second Amended Complaint). Thereafter, Defendants Wells Fargo Bank N.A. and Wells Fargo National Bank West filed a Motion to Dismiss the Second Amended Complaint. *Id.* at *ECF No. 87*.

On February 7, 2024, United States Bankruptcy Judge Craig A. Gargotta granted-in-part and denied-in-part Wells Fargo Bank N.A. and Wells Fargo National Bank West's ("Wells Fargo West") Motion to Dismiss the Second Amended Complaint. *Id.* at *ECF No. 121* (Order). Relevant here, per the ruling, Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust were found to have stated claims against Defendant Wells Fargo Bank N.A. for (1) Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A against Wells Fargo Bank N.A.; (2) Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud against Wells Fargo Bank N.A.; (3) Negligence against Wells Fargo Bank N.A.; and (4) Violation of the Texas Theft Liability Act against Wells Fargo Bank N.A. and Wells Fargo West. *Id.* at *ECF No. 118* (Hearing Transcript); *Id.* at *ECF No. 121* (Order). Judge Gargotta stated his reasons for the ruling on the record during a teleconference on January 24, 2024. *Id.* at *ECF No. 118* (Hearing Transcript).

On February 27, 2024, the parties agreed to the entry of a Stipulation, wherein Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust's claims were dismissed without

prejudice for the purpose of Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust refiling their claims and causes of action in the United States District Court for the Western District of Texas, San Antonio Division, "in substantially similar form as asserted in [the] Adversary Proceeding." *Id.* at *ECF No. 127* (Stipulation). The parties specifically agreed:

> Plaintiffs and Defendants stipulate and agree that [the Bankruptcy] Court's 12(b) Ruling will apply to the District Court Complaint as if that 12(b) Ruling had been made by the District Court. Accordingly, Defendants waive any right to move to dismiss the District Court Complaint under Rule 12(b) and will instead answer the District Court Complaint. Whether and the extent to which Defendants have any post-answer ability in District Court to challenge the substance of the 12(b) Ruling will be determined according to the Federal Rules of Civil Procedure, with each side preserving whatever rights it would have had on this point had Plaintiffs' Surviving Claims remained in this Court.

*Id.* at *ECF No. 127* (Stipulation).

## II.    The Instant Case in the District Court

Subsequently, on March 4, 2024, Plaintiffs Mark Verstuyft, Robin Verstuft, the Beyer Living Trust—and newly added Plaintiffs Gordon Kuenemann and Wendy Kuenemann—filed their Original Complaint in this Court. *ECF No. 1*. Thereafter, these Plaintiffs amended their Complaint. *ECF No. 110*. Aside from the addition of the Kuenemann Plaintiffs, the Amended Complaint in this matter largely mirrors the general allegations found in the Adversary Proceeding's Second Amended Complaint. *Compare ECF No. 110* and Adversary Case No. 23-05039 at *ECF No. 66* (Second Amended Complaint). The Court, briefly, reproduces the general allegations here.

As alleged, Pettit formed Chris Pettit & Associates P.C. ("CP&A"), a law firm, in 1996. *ECF No. 110* at 3. In 2017, Wells Fargo Bank N.A.[1] allowed Pettit to open a New Mexico IOLTA (Interest on Lawyers' Trust Account) ("NM IOLTA"), despite Pettit not being licensed to

---

[1] In the Amended Complaint, Plaintiffs refer to Defendant Wells Fargo Bank N.A. as "Wells Fargo." *See ECF No. 110* at 2. Accordingly, the Court interprets any references to "Wells Fargo" as attributable to Defendant Wells Fargo Bank N.A. and not Defendant Wells Fargo National Bank West.

3

practice law in the State of New Mexico. *Id*. at 5–7. Through use of the NM IOLTA, Pettit stole "nearly $34,000,000 over a mere thirteen (13) months, including approximately $3,000,000 of the Verstuyft's money, $1,200,000 of the Beyer Trust Money, and $1,000,000 of the Kuenemann['s] money."[2] *Id*. at 4. Per Plaintiffs, "[t]he losses sustained . . . were made possible because of the abject disregard by Wells Fargo of its own internal policies, existing federal law[,] and New Mexico law regulating lawyer trust accounts." *Id.* at 4. "In this lawsuit the Plaintiffs seek to hold Wells Fargo jointly liable with Pettit for the damages suffered by them because of Wells Fargo's enabling Pettit to steal millions of dollars from them." *Id.* at 3.

Plaintiffs assert the following causes of action: (1) Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A against Wells Fargo N.A.; (2) Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud against Wells Fargo N.A.; (3) Negligence and Gross Negligence against Wells Fargo N.A.; and (4) violation of the Texas Theft Liability Act against Wells Fargo N.A. and Wells Fargo West. *ECF No. 110* at 54–70. Plaintiffs additionally seek declaratory relief, requesting the Court declare "the NM IOLTA Account is a 'trust' account governed by the IOLTA Rules established and promulgated of the New Mexico Bar." *Id*. at 58–71.

Now before the Court is Defendants' Motion to Dismiss, (*ECF No. 116*). Plaintiffs Mark Verstuyft, Robin Verstuyft, Gordon Kuenemann, Wendy Kuenemann, Earl Beyer, and Kenneth Beyer filed a Response, (*ECF No. 118*), to which Defendants filed a Reply, (*ECF No. 120*).

---

[2] As detailed in the Amended Complaint, the Verstuyfts have been awarded a judgment against Pettit "for actual damages in the amount of $2,702,899.55, consequential damages in the amount of $735,542.20, statutory damages in the amount of $187,000 for violation of the [Texas Theft Liability Act], and $34,384,417.70 in punitive damages. *ECF No. 110* at 2; *See* Adversary Case No. 23-05039 at *ECF No. 162* (Final Default Judgment and Award of Damages with Findings of Fact and Conclusions of Law). As to the Beyer Living Trust, the judgment awarded actual damages in the amount of $863,186.17, statutory damages in the amount of $73,000 for violation of the Texas Theft Liability Act, and $8,631,861.70 in punitive damages. *Id*.

Also before the Court is Plaintiffs' Motion to Strike, (*ECF No. 117*), which is fully briefed, (*see ECF No. 119*), and therefore ripe for ruling.

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id*. When reviewing the Complaint, the

"court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

A Complaint should only be dismissed under Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his or her best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## ANALYSIS

### I. Plaintiffs' Motion to Strike and the Parties' Prior Stipulation

#### A. Plaintiffs' Motion to Strike

The Court first addresses Plaintiffs' Motion to Strike Defendants' Motion to Dismiss, (*ECF No. 117*). Plaintiffs argue Defendants' Motion to Dismiss should be stricken pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") due to the parties' Stipulation ("the Stipulation") entered in Adversary Number 23-05039. *See id*; *see also* Adversary Case No. 23-05039 at *ECF No. 127* (Stipulation). In Response, Defendants claim Rule 12(f) applies to pleadings, providing no mechanism to strike another party's motion. *See ECF No. 119*. Plaintiffs did not file a reply.

As described above, the parties agreed to the Stipulation after the Bankruptcy Court issued its ruling on Defendants' Motion to Dismiss the Second Amended Complaint. *See* Adversary Case No. 23-05039 at *ECF No. 127* (Stipulation).

Relevant here, per the ruling, Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust were found to have stated claims against Defendant Wells Fargo Bank N.A. for (1) Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A against Wells Fargo Bank N.A.; (2) Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud against Wells Fargo Bank N.A.; (3) Negligence against Wells Fargo Bank N.A.; and (4) Violation of the Texas Theft Liability Act against Wells Fargo Bank N.A. and Wells Fargo West. *Id*. at *ECF No. 118* (Hearing Transcript); *Id*. at *ECF No. 121* (Order). Judge Gargotta stated his reasons for the ruling on the record during a teleconference on January 24, 2024. *Id*. at *ECF No. 118* (Hearing Transcript).

On February 27, 2024, the parties agreed to the entry of the Stipulation, wherein Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust's claims were dismissed without prejudice for the purpose of Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust refiling their claims and causes of action in the United States District Court for the Western District of Texas, San Antonio Division, "in substantially similar form as asserted in [the] Adversary Proceeding." *Id*. at *ECF No. 127* (Stipulation). The parties specifically agreed:

> Plaintiffs and Defendants stipulate and agree that [the Bankruptcy] Court's 12(b) Ruling will apply to the District Court Complaint as if that 12(b) Ruling had been made by the District Court. Accordingly, Defendants waive any right to move to dismiss the District Court Complaint under Rule 12(b) and will instead answer the District Court Complaint. Whether and the extent to which Defendants have any post-answer ability in District Court to challenge the substance of the 12(b) Ruling will be determined according to the Federal Rules of Civil Procedure, with each side preserving whatever rights it would have had on this point had Plaintiffs' Surviving Claims remained in this Court.

*Id*. at *ECF No. 127* (Stipulation).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike" any "redundant, immaterial, impertinent, or scandalous matter" "from a *pleading.*" Fed. R. Civ. P. 12(f) (emphasis added). Federal Rule of Civil Procedure 7 lists which types of court filings qualify as "pleadings," and which filings instead qualify as "motions." *Compare* Fed. R. Civ. P. 7(a) (listing the seven types of "pleadings" that "are allowed") *with* Fed. R. Civ. P. 7(b) (discussing "motions"). Motions to dismiss are not among the list of filings that qualify as "pleadings" under Rule 7. *See* Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.").

Because a motion to dismiss is not a "pleading," it does not appear that Rule 12(f) authorizes the Court to "strike . . . any . . . matter" from Defendants' Motion to Dismiss. *See*, *e.g.*, *Winegarner v. Hartz*, No. 3:17-CV-01507, 2018 WL 718478, at *3 (N.D. Tex. Jan. 16, 2018), *R. & R. adopted*, No. 3:17-CV-01507, 2018 WL 704852 (N.D. Tex. Feb. 5, 2018), *and objections overruled*, No. 3:17-CV-01507, 2018 WL 10394858 (N.D. Tex. June 13, 2018) ("[I]t is generally accepted that '[m]otions to strike under Rule 12(f) are not authorized to be filed against other motions, only pleadings.' For this reason alone, the motions to strike the motions to dismiss should be denied.") (quoting *Burnett v. ARCCA Inc.*, No. 5:15-cv-01214, 2016 WL 828151 (W.D. La. Feb. 25, 2016)); *see also O'Connor v. Nevada*, 507 F. Supp. 546, 548 (D. Nev. 1981) ("[A] Rule 12(f) motion to strike only concerns striking matters from pleadings and a motion to dismiss is not a pleading.").

8

Thus, as Defendants correctly noted, Defendants' Motion to Dismiss, (*ECF No. 116*), is a motion, not a pleading. As such, Federal Rule of Civil Procedure 12(f) does not apply. *E.g.*, *Hill v. Est. of Hill*, 594 F. Supp. 3d 741, 757 (N.D. Tex. 2022). Accordingly, Plaintiffs' Motion to Strike Defendants' Motion to Dismiss, (*ECF No. 117*), will be denied.

### B.    The Parties' Prior Stipulation

The Court next addresses the applicability of the Stipulation to Defendants' Motion to Dismiss, (*ECF No. 116*). *See also* Adversary Case No. 23-05039 at *ECF No. 127* (Stipulation). In Defendants' Motion to Dismiss, Defendants presumably argue the Stipulation permits Defendants to move for dismissal against all Plaintiffs (and not just against the Kuenemanns, who were added to this matter with the filing of Plaintiffs' Original Complaint in this case). *ECF No. 116* at 26. Defendants explain:

> Wells Fargo anticipates that Plaintiffs will argue Wells Fargo and WF West are barred from bringing this motion pursuant to a stipulation entered in another matter. Dkt. 13-1. But, Plaintiffs' amendment of their complaint to add new claims premised upon new legal theories, facts, and even parties (the Kuenemann Plaintiffs) was not contemplated by the stipulation. *Id*. Therefore, Wells Fargo and WF West did not waive their right to contest these brand new legal theories, claims or allegations. Moreover, a plain reading of the stipulation makes clear that it applied only to the operative Complaint. Consequently, Plaintiffs decision to amend the Complaint permits Wells [Fargo] to respond because it is a substantial deviation from the prior Complaint. Dkt. 13-1 ¶ 4. And, the stipulation expressly provides that WF West could challenge any new claim against it. Id. ¶ 5. This motion is thus properly brought.

*Id*. at 26. Defendants' Motion to Dismiss being directed against all Plaintiffs (and not just against the Kuenemanns, who were added to this matter with the filing of Plaintiffs' Original Complaint in this case), however, is at odds with the Stipulation and the prior position Defendants have taken.

When Defendants filed their initial Motion to Dismiss in this matter, (*ECF No. 11*), they acknowledged the Kuenemann Plaintiffs' addition, stating:

At the outset, the Wells Fargo Defendants note that this case does not arise out of a vacuum. Two of the three sets of Plaintiffs here, the Verstuyfts and the Beyer Living Trust, come to this Court following considerable litigation against Wells Fargo in this District's Bankruptcy Court. Pursuant to a prior stipulation, Wells Fargo does not move to dismiss their claims—although it nevertheless believes they both fail to satisfy federal pleading standards and are substantively merit-less.[1] However, the Kuenemanns are new parties. Because the Kuenemanns were not previously parties to the bankruptcy action or the stipulation, and because they fail to state claims upon which relief can be granted, Wells Fargo and WF West move to dismiss their claims.

*ECF No. 11* at 1. Defendants again acknowledged the Kuenemann Plaintiffs' addition in their Second Motion to Dismiss, (*ECF No. 92*), and repeated they were not moving to dismiss the Verstuyfts' and the Beyer Living Trust's claims.

To the extent Defendants now argue "Plaintiffs decision to amend the Complaint permits Wells [Fargo] to respond [against all Plaintiffs (and not just against the Kuenemanns, who were added to this matter with the filing of Plaintiffs' Original Complaint in this case)] because it is a substantial deviation from the prior Complaint," the Court finds this argument unavailing. *ECF No. 116* at 26. While Defendants claim Plaintiffs added "a new cause of action for declaratory relief," the Court notes "[t]he federal Declaratory Judgment Act, 28 U.S.C. § 2201, is procedural only, not substantive." *ECF No. 119* at 4; *e.g.*, *Bank of Am., N.A. v. Caviel*, No. 4:22-CV-02747, 2024 WL 1741818, at *2 (S.D. Tex. Mar. 5, 2024) (citing *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984)). Further, as stated, aside from the addition of the Kuenemann Plaintiffs, the Amended Complaint in this matter largely mirrors the general allegations found in the Adversary Proceeding's Second Amended Complaint. *Compare ECF No. 110* and Adversary Case No. 23-05039 at *ECF No. 66* (Second Amended Complaint). The Court therefore finds the claims and causes of action asserted against Defendants by Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust to be substantially similar and that the Stipulation indicates Wells Fargo did not intend to re-challenge these claims and causes of

action. *Id.* at *ECF No. 127* (Stipulation) ("Defendants waive any right to move to dismiss the District Court Complaint under Rule 12(b) and will instead answer the District Court Complaint."). Accordingly, the Court will analyze Defendants' Motion to Dismiss, (*ECF No. 116*), as directed against the Kuenemann Plaintiffs' claims and causes of action only.

## II. Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A by Wells Fargo

Defendants argue the Kuenemann Plaintiffs' cause of action for knowing participation in the breach of the fiduciary duty of Pettit to the clients of CP&A by Wells Fargo should be dismissed because "Plaintiffs have not established Wells Fargo *knew* Pettit owed Plaintiffs a fiduciary duty, and breached that fiduciary duty, all while defrauding Plaintiffs." *ECF No. 116* at 16. In their Response, Plaintiffs counter the facts in the Amended Complaint support a finding of actual knowledge on the part of Wells Fargo. *ECF No. 118* at 18–21.

"To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." *D'Onofrio v. Vacation Pubs., Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (applying Texas law)).[3] Here, with respect to the first element, Defendants do not contest whether the Kuenemann Plaintiffs properly allege the existence of a fiduciary duty on behalf of Pettit to his clients. *See ECF No. 116*. The Court further observes that while the Amended Complaint does not use the words "attorney-client relationship," allegations such as "Pettit told the Kuenemanns that he

---

[3] Defendants do not reference the *D'Onofrio* case. *See ECF No. 116* at 16. Defendants first cite *Litson-Gruenber v. JPMorgan Chase*, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009), a case in which a district court addressed, in the 12(b)(6) context, causes of action for "aider and abettor claims," "breach of fiduciary duty and constructive fraud claims," and "negligence and negligence per se claims." *Id*. Defendants later correctly cite *CBIF LP v. TGI Friday's Inc.*, which lists the elements for joint tortfeasor liability for knowing participation in the breach of a fiduciary duty. No. 05-15-00157-CV, 2017 WL 1455407, at *17 (Tex. App.—Dallas 2017). However, Defendants do not address these elements in Defendant's Motion to Dismiss. *See ECF No. 116* at 16.

would be their lawyer for life" are enough at this early stage in the litigation for the Court to infer an attorney-client relationship. *ECF No. 110* at 47. The Court therefore finds the Kuenemann Plaintiffs' allegations sufficient as to the first element.

As to the second element, Defendants do contest whether the Kuenemann Plaintiffs properly allege Wells Fargo knew of Pettit's fiduciary duty to his clients, primarily by claiming the NM IOLTA is not a trust account. *ECF No. 116* at 4–8 and 10–14.

As alleged in the Amended Complaint, the NM IOLTA account "was opened as an IOLTA Account," "a *prima facie* trust account," and Bridget Cerny, a designated representative of Wells Fargo, "acknowledged the 'trust' nature of the NM IOLTA Account." *ECF No. 110* at 4–5. The Kuenemann Plaintiffs attach to the Amended Complaint Pettit's "Business Account Application," describing the "Account Product Name" as a "Basic Business Checking IOLTA." *ECF No. 110-9*. Attached to Defendants Motion to Dismiss as exhibits is a copy of "Wells Fargo's Business Account Agreement effective April 24, 2017," and a copy of a blank "Financial Institution Certification Statement," that Pettit allegedly completed. *ECF Nos. 116-1, 116-2*.

In deciding whether to grant a motion to dismiss, it is well-established that the district court may not look beyond the pleadings. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 340 (5th Cir. 2008). The pleadings include the complaint and any documents attached to the complaint. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Likewise, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). While Plaintiffs also make reference in the Amended Complaint to a blank "Financial Institution Certification Statement," that Pettit allegedly completed, (*ECF No. 110-4*), Defendants' attached copy of "Wells

12

Fargo's Business Account Agreement effective April 24, 2017" is not part of the pleadings since it is not attached to the Amended Complaint nor referenced in the Amended Complaint. As such, the Court cannot consider it in deciding Defendants' Motion to Dismiss.

When a party presents matters outside the pleadings with a Rule 12(b)(6) motion, the Court has two options: (i) it can treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56"), and provide all parties a reasonable opportunity to present all the material that is pertinent to the motion; or (ii) it may refuse to consider the materials outside the pleadings and decide the Rule 12(b)(6) motion under the proper standard of review. *See, e.g., Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188 (S.D. Tex. 2008).

When, as in this case, "documents outside the pleadings have been submitted in connection with a motion to dismiss and discovery would be appropriate to resolve the issues raised in that motion, it is appropriate to allow discovery before converting the motion into one for summary judgment." *Id*. at 187 (citations omitted); s*ee also Simmang v. Tx. Bd. Of Law Examiners*, 346 F. Supp. 2d 874, 890 (W.D. Tex. 2004) ("[I]f little or no discovery has been conducted on the issue for which the extraneous material was submitted [in connection with a motion to dismiss under Rule 12(b)(6) ], the Court may decline to consider the attached materials and decline to convert the motion into a summary judgment motion.") (citations omitted). At this juncture, the Court will not convert Defendants' Motion to Dismiss to a dispositive motion under Rule 56 but rather will decide Defendants' Motion to Dismiss on its merits without considering Defendants' attached copy of "Wells Fargo's Business Account Agreement effective April 24, 2017." Allegations in the Amended Complaint include, among other things, "Wells Fargo knew the deposits were fiduciary property to be held in trust." *ECF No. 110* at 64. The Court therefore finds the Kuenemann Plaintiffs' allegations sufficient as to the second element.

Regarding the third element, Defendants also seemingly contest whether the Kuenemann Plaintiffs properly allege Wells Fargo was aware it was participating in the breach of a fiduciary relationship. *ECF No. 116* at 18–22. In their Response, Plaintiffs do not address this element directly. *See ECF No. 118* at 18–21. Instead of distinguishing the second and third elements, Plaintiffs aver only that "the facts as plead in the Complaint support a finding of actual knowledge on the part of Wells Fargo," before proceeding to provide citations to the Amended Complaint. *Id*. Included in these citations to the Amended Complaint are that:

> d. Wells Fargo had actual knowledge that the NM IOLTA Account received funds from each of the Plaintiffs. (Complaint ¶ 54-57, 59-61, 62-64 and Complaint Exhibits 24, 25, 32, 33, and 38).

> e. Wells Fargo had actual knowledge that the funds belonging to each of the Plaintiffs were used to pay obligations of Pettit owing to Wells Fargo and/or Wells Fargo West. (Complaint ¶ 54-57, 59-61 and Complaint Exhibits 23, 24, 25, 31, 32, 33, 36, and 38).

*Id.* Reviewing these portions of the Amended Complaint reveals Plaintiffs allege "at the time of the acceptance of the Verstuyft Sale Proceeds Wells Fargo had ***actual knowledge*** that Pettit was not legally eligible to control the NM IOLTA Account, that Pettit had repeatedly used funds from the NM IOLTA [A]ccount in an unauthorized manner, and, on information and belief was aware of the ongoing criminal investigation of Pettit by the U.S. Department of Justice." *Id.* at 41 (emphasis in original). Similarly, Plaintiffs allege "[a]t the time of the acceptance of the Beyer Sale Proceeds Wells Fargo had actual knowledge that Pettit was not legally eligible to control the NM IOLTA Account, had ***actual knowledge*** of the multitude of irregular if not outright illegal transactions by Pettit in the NM IOLTA Account, and, on information and belief, was aware of the ongoing criminal investigation of Pettit by the U.S. Department of Justice." *Id*. at 45 (emphasis added). Finally, Plaintiffs allege the Kuenemann's funds "had been completely consumed by Pettit with the knowledge of Wells Fargo." *Id*. at 48.

14

In this context, Texas Court of Appeals have explained:

> [T]hat "[a] cause of action premised on contribution to a breach of a fiduciary duty . . . must involve the knowing participation in such a breach." *Wootten*, 59 S.W.3d at 722; *see Kinzbach*, 160 S.W.2d at 514. Accordingly, "imputed knowledge is insufficient to find knowing participation in a breach of fiduciary duty." *DeYoung v. Beirne, Maynard & Parsons, L.L.P.*, No. 01-13-00365-CV, 2014 WL 1058201 at *6[] (Tex. App.—Houston [1st Dist.] Mar. 18, 2014, no pet.)[]; *accord* [*Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2022 WL 179609, at *12 (N.D. Tex. Jan. 20, 2022)] (noting that for claims of knowing participation, "[c]ourts have made clear that a less culpable mental state, such as constructive knowledge, will not suffice"); [*Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 4:17-CV-00418, 2019 WL 5390172, at *3 (E.D. Tex. July 30, 2019), *R. & R. adopted*, No. 4:17-CV-00418, 2019 WL 4071782 (E.D. Tex. Aug. 29, 2019)] (concluding that knowing participation claim under Texas law requires actual knowledge, not constructive knowledge).

*LMP Austin Eng. Aire, LLC through Lafayette Eng. Partner, LLC v. Lafayette Eng. Apartments, LP*, 654 S.W.3d 265, 290 (Tex. App.—Austin 2022), *review granted, judgment vacated, and remanded to the trial court for rendition of judgment in accordance with the parties' settlement agreement*, No. 22-0995, 2024 WL 2871287 (Tex. June 7, 2024).

Here, acknowledging this authority and after reviewing the Amended Complaint as a whole, the Court finds the Kuenemann Plaintiffs have sufficiently alleged at this juncture Wells Fargo was aware of its alleged participation in the breach of Pettit's fiduciary relationship. While it is unsurprising Defendants vehemently dispute this element of the Kuenemann Plaintiffs' cause of action, the Court notes that whether the Kuenemann Plaintiffs ultimately prove Wells Fargo's actual knowledge is a matter not to be resolved at this stage. The Court therefore also finds the Kuenemann Plaintiffs' allegations sufficient as to the third element.

Accordingly, Defendants Motion to Dismiss, (*ECF No. 116*), is denied in this regard.

### III. Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud by Pettit Against the Clients of CP&A by Wells Fargo

Defendants argue the Kuenemann Plaintiffs' cause of action for joint tortfeasor liability for knowing participation in the perpetration of fraud is not a cause of action that has ever been recognized by a Texas court. *ECF No. 116* at 23. In their Response, Plaintiffs counter—without citing any authority—that joint tortfeasor liability for knowing participation in the perpetration of fraud "is a recognized and viable cause of action under Texas Law." *ECF No. 118* at 22.

As explained by a sister district court:

> [B]ecause Texas does not explicitly recognize a cause of action for aiding and abetting fraud, it is not clear that Texas law recognizes a cause of action for "participation in fraud" that is separate from a direct claim for fraud or conspiracy. In other words, it is questionable whether, to plead a plausible "joint tortfeasor claim" for fraud, it is sufficient to allege that a third party "assisted" or "participated" in another's fraud without adequately pleading that the third party himself engaged in fraudulent conduct with the requisite knowledge and intent.

*Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19-CV-01594, 2020 WL 554583, at *9 (N.D. Tex. Feb. 4, 2020). The court went on to hold that, for the plaintiff to adequately plead the defendant is jointly liable for alleged fraud by participating in a fraudulent scheme, the plaintiff must plausibly plead the defendant itself engaged in fraud; i.e., the plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 9(b) as to the defendant directly, and not merely as an alleged joint tortfeasor. *Id*. Because the plaintiff "neither explicitly address[ed] the elements of fraud nor [made] clear which of [the defendant's] representations or omissions give[] rise to fraud as opposed to negligence," the Court dismissed the plaintiff's cause of action. *Id*.

Here, the Court will dismiss the Kuenemann Plaintiffs' cause of action based on the same reasoning. *See ECF No. 110*. In their Response, Plaintiffs provide no authority for their claim that joint tortfeasor liability for knowing participation in the perpetration of fraud "is a recognized and viable cause of action under Texas Law." *ECF No. 118* at 22. The Court notes that in a case connected to the underlying facts at issue in this matter, a bankruptcy court also dismissed a

16

cause of action for "the knowing participation in the perpetration of fraud." *In re Chris Pettit & Associates, P.C.*, 670 B.R. 602, 628–629 (Bankr. W.D. Tex. 2025). The Court will, by separate order, notify Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust of its intention to *sua sponte* dismiss their causes of action for joint tortfeasor liability for knowing participation in the perpetration of fraud as well and provide them an opportunity to respond. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642–643 (5th Cir. 2007); *see also Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014).

Accordingly, Defendants' Motion to Dismiss, (*ECF No. 116*), is granted in this regard.

## IV.    Negligence and Gross Negligence

Defendants argue the Kuenemann Plaintiffs establish no duty to support their causes of action for negligence and gross negligence. *ECF No. 116* at 14. In their Response, Plaintiffs counter the facts in the Amended Complaint establish a duty owed by Wells Fargo. *ECF No. 118* at 22.

To state a claim for negligence, a plaintiff must show: (1) a duty is owed; (2) the duty was breached; and (3) the breach was a proximate cause for the plaintiff's damages. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). Courts may make determinations on a party's duty of care when deciding a motion to dismiss. *Davis v. Dallas Cty.*, 541 F. Supp. 2d 844, 850–53 (N.D. Tex. 2008). "Whether a duty exists is a question of law for the court to decide under the facts surrounding the occurrence in question." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). The decision to impose a legal duty "is a multifaceted issue requiring [courts] to balance a number of factors," including risk and utility. *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002) (citations omitted). This inquiry balances "the risk, foreseeability, and likelihood of injury

17

against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant." *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 410 (Tex. 2009) (citations omitted).

Generally, a bank owes no duty to non-customers or those the bank has no relationship with. *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.); *see also Red Rock v. Jafco Ltd.*, 79 F.3d 1146 (5th Cir. 1996) ("A bank, however, owes no legal duty of care to investigate or disclose its customers' conduct or intent to third parties with whom the bank's customers do business."). To determine if a duty applies to a bank customer, courts weigh the above *Peavy* factors. *Siegfried v. JPMorgan Chase, N.A.*, No. 1:18-CV-01026, 2019 WL 13194134, at *4 (W.D. Tex. Oct. 25, 2019) (citing *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 155 (Tex. App.—El Paso 1996, writ denied)).

For example, some courts have found where the potential victim's identity, the mode of harm, and the way to avoid that harm are all particularly known to the bank in advance, by contrast, Texas law may well impose a duty of care on the bank in connection with that victim. *See City Bank v. Compass Bank*, No. 3:10-CV-00062, 2010 WL 2680585, at *3 (W.D. Tex. July 2, 2010); *see also Guerra v. Regions Bank,* 188 S.W.3d 744, 747 (Tex. App.—Tyler 2006) (citing the traditional factors of "risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant"). Such a circumstance differs markedly from a case in which a fraud victim argues that a bank should have been continually monitoring all transactions over all customer accounts for unspecified indicia of fraudulent activity.

In this context, last month the Fifth Circuit Court of Appeals provided the following examination of the applicable law:

18

Texas courts have held that banks do not owe duties to third parties in opening potentially fraudulent accounts, citing a lack of foreseeable danger. *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) ("It is, of course, possible that any bank account may be used for a wrongful purpose. But we see nothing in the facts of this case that would lead [the bank] to anticipate a danger of injury to another when it opened and maintained the [fraudulent accounts]."). Neither Venkatraman's status as a longtime BOA customer nor his later interactions with BOA to obtain a partial refund, changes this analysis, because these allegations do not affect this foreseeability rationale: Venkatraman's injury from deposits made into third-party BOA accounts was no more foreseeable because he was a customer with respect to other transactions, or because he later sought return of his funds. BOA thus could not be liable for negligence or, even assuming such a cause of action exists under Texas law, negligent enablement of fraud. *See Bibicheff v. PayPal, Inc.*, No. 2:17-[CV]-[0]4679, 2020 WL 2113373, at *5 (E.D.N.Y. May 4, 2020) (unpublished) (rejecting proposed cause of action for "negligent enablement of imposter fraud").

*Venkatraman v. Bank of Am., N.A.*, No. 25-10969, 2026 WL 1008501, at *1 (5th Cir. Apr. 14, 2026).

Here, the Court will dismiss the Kuenemann Plaintiffs' causes of action for negligence and gross negligence.[4] In their Response, the Kuenemann Plaintiffs cite two cases in their attempt to establish Defendants owed them a duty, *Wichita Royalty Co. v. City Nat. Bank of Wichita Falls*, 89 S.W.2d 394 (Tex. 1935), and *Texas Bank and Tr. in Wichita Falls v. Helmcamp*, 506 S.W.2d 667 (Tex. Civ. App.—Fort Worth 1974). These cases, however, do not involve IOLTA accounts or discuss the duties of banks to non-customers. Of note, the Kuenemann Plaintiffs do not allege they were customers of Wells Fargo. *ECF No. 110* at 39; *see also Taya Agric. Feed Mill Co. v. Byishimo*, No. 4:21-CV-03088, 2022 WL 103557, at *4–6 (S.D. Tex. Jan. 11, 2022). The Court has not located, and the Kuenemann Plaintiffs have not provided the Court, any authority to support the proposition that these cases have been extended to establish a duty in negligence. These cases also stand in contrast to the well-cited line of authority the Court mentions, as well as other cases from the Fifth Circuit Court of Appeals that the Court finds persuasive.

---

[4] *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 n.2 (5th Cir. 2014) ("To recover for gross negligence in Texas, a plaintiff must satisfy the elements of an ordinary negligence . . . claim.").

19

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 Fed. Appx. 239 (5th Cir. 2020) (unpublished) (rejecting argument that a bank has a general duty to prevent fraud affecting non-customers).

To the extent the Kuenemann Plaintiffs claim, in part, Defendants owed them a duty based on the "overruling [of] its own internal requirements for the opening of an IOLTA account," this argument is also foreclosed. *ECF No. 118* at 23. The Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action in favor of customers or others. *See FFE Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 92 (Tex. 2006); *Guerra,* 188 S.W.3d at 747. Thus, because "[a] Bank's internal policies do not determine a standard of care or duty," this argument fails. *Guerra,* 188 S.W.3d at 747 (citing *FFE Transp. Servs.,* 154 S.W.3d at 92).

The Court finally observes that in *Midwest Feeders, Inc.* the Fifth Circuit acknowledged "caselaw [interpreting laws from jurisdictions outside Texas] supports the idea that while a bank generally owes no duty to a non-customer, the bank may owe such a duty to a non-customer where 'a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation.'" 886 F.3d at 518–519 (citing *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094–95 (11th Cir. 2017)). However, as the *Midwest Feeders, Inc.* Court also recognized, federal courts cannot use an *Erie* guess to impose upon a state, such as Texas here, "a new regime of liability for its banks." *Id*. (citing *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243–44 (5th Cir. 2012) ("When making an *Erie* guess, our task is to attempt to predict state law, not to create or modify it.") (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d

20

432, 442 (5th Cir. 2008))). As such, the Court declines to adopt the Kuenemann Plaintiffs' negligence theory of liability here.

Accordingly, Defendants' Motion to Dismiss, (*ECF No. 116*), is also granted in this regard.

## V.    Violation of the Texas Theft Liability Act

Defendants argue the Kuenemann Plaintiffs' cause of action for violation of the Texas Theft Liability Act should be dismissed because the Kuenemann Plaintiffs' do not properly allege Wells Fargo had an intent to steal and the Kuenemann Plaintiffs include no allegations at all regarding Wells Fargo West's intent to steal. *ECF No. 116* at 24–25. In their Response, Plaintiffs counter the facts in the Amended Complaint establish the requisite intent. *ECF No. 118* at 24–25.

The Texas Theft Liability Act states that "[a] person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003(a). Under the Act, theft means "unlawfully appropriating property or unlawfully obtaining services" according to the Texas Penal Code definition. *See id.* § 134.002(2). A person commits theft under the Texas Penal Code when he or she "unlawfully appropriates property with intent to deprive the owner of the property." Tex. Penal Code § 31.03(a).

Here, the Court will dismiss the Kuenemann Plaintiffs' cause of action for violation of the Texas Theft Liability Act. In the Amended Complaint, under the section labeled "COUNT IV Texas Theft Liability Act – Wells Fargo and Wells Fargo National Bank West," Plaintiffs plead:

> Wells Fargo and, as applicable, [Wells Fargo West] unlawfully appropriated these funds by taking them or permitting them to be taken through a multitude of discrete Theft events without the consent of any of the Pettit Victims.
>
> . . .
>
> Wells Fargo acting both in concert with Pettit and individually appropriated a portion of these funds and permitted Pettit to appropriate the funds on deposit in the

21

> NM IOLTA Account which funds are fiduciary property by virtue of the deposit of those funds into the NM IOLTA Account and the determination in the Pettit Judgment. These funds were taken intentionally which deprived each of the Kuenemanns, the Verstuyfts, and Beyer Trust of their funds through discrete transactions occurring between November 2021 and May 2022.

*ECF No. 110* at 66–67. After reviewing the Amended Complaint as a whole, the Court finds the Kuenemann Plaintiffs fail to plead any specific facts to support this unadorned accusation against Wells Fargo or that Wells Fargo had the "intent to deprive [the Kuenemann Plaintiffs] of the[ir] property." Tex. Penal Code § 31.03(a). As Defendants correctly noted, regarding Wells Fargo West, there are no allegations relating to its intent at all. While the Kuenemann Plaintiffs are not required to plead "detailed factual allegations," they must still plead facts which constitute "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Stanley Bros. Farms, LLC v. McBarron*, No. 3:20-CV-00397, 2020 WL 7353759, at *3 (N.D. Tex. Dec. 15, 2020) (quoting *Twombly*, 550 U.S. at 555); *see also Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-00342, 2012 WL 4633177, at 14–15 (E.D. Tex. Oct. 2, 2012). Thus, the facts as plead do not suffice.[5]

Accordingly, Defendants' Motion to Dismiss, (*ECF No. 116*), is also granted in this regard.

**VI.    Request for Declaratory Relief**

In a footnote, Defendants argue "Plaintiffs' claim for declaratory relief must be dismissed," again by claiming the NM IOLTA is not a trust account. *ECF No. 116* at 13 n.5.

Relevant here, the Fifth Circuit has stated, "[t]he federal Declaratory Judgment Act, 28 U.S.C. § 2201, is procedural only, not substantive, and hence the relevant cause of action must

---

[5] The Kuenemann Plaintiffs include some other allegations that use the word "intentionally." *ECF No. 110* at 2, 7, 15, 17, 18. For example, the Kuenemann Plaintiffs state "Wells Fargo flagrantly and intentionally disregarded the threshold requirement of New Mexico law that each signatory to an IOLTA account in that state be licensed by the State of New Mexico to practice law." *Id*. at 17–18. The Court finds this allegation, and the others, also do not speak to Wells Fargo's "intent to deprive [the Kuenemann Plaintiffs] of the[ir] property." Tex. Penal Code § 31.03(a).

arise under some other federal law for section 1331 to afford jurisdiction of a declaratory judgment suit." *Bank of Am., N.A. v. Caviel*, No. 4:22-CV-02747, 2024 WL 1741818, at *2 (S.D. Tex. Mar. 5, 2024) (citing *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984)). If there is no underlying substantive claim, then there is no legal action upon which declaratory relief can be granted. *Id*. (citing *Lewis v. Citadel Servicing Corp.*, No. 4:21-CV-01294, 2023 WL 7926809, at *6 (S.D. Tex. Nov. 16, 2023)).

As stated above, the Court will not convert Defendants' Motion to Dismiss to a dispositive motion under Rule 56 but rather will decide Defendants' Motion to Dismiss on its merits without considering Defendants' attached copy of "Wells Fargo's Business Account Agreement effective April 24, 2017." Due to this, and the fact that at this juncture multiple underlying substantive claims  and causes of action remain to be actually litigated, Defendants' Motion to Dismiss, (*ECF No. 116*), is denied in this regard.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike Defendants' Motion to Dismiss, (*ECF No. 117*), is **DENIED**. Defendants' Motion to Dismiss, (*ECF No. 116*), is **GRANTED-IN-PART AND DENIED-IN-PART.**

**Plaintiffs Robin Verstuyft, Mark Verstuyft, and the Beyer Living Trust's** causes of action for (1) Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A against Wells Fargo Bank N.A.; (2) Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud against Wells Fargo Bank N.A.; (3) Negligence and Gross Negligence against Wells Fargo Bank N.A.; and (4) Violation of the Texas Theft Liability Act against Wells Fargo Bank N.A. and Wells Fargo West shall at this juncture proceed. **The Court will, by separate order, notify Plaintiffs Robin Verstuyft, Mark**

**Verstuyft, and the Beyer Living Trust of its intention to *sua sponte* dismiss their causes of action "for joint tortfeasor liability for knowing participation in the perpetration of fraud" and provide them an opportunity to respond.**[6]

**Plaintiffs Gordon Kuenemann and Wendy Kuenemann's** cause of action for (1) Joint Tortfeasor Liability for Knowing Participation in the Breach of the Fiduciary Duty of Pettit to the Clients of CP&A against Wells Fargo Bank N.A. shall at this juncture proceed.

**Plaintiffs Gordon Kuenemann and Wendy Kuenemann's** causes of action for (2) Joint Tortfeasor Liability for Knowing Participation in the Perpetration of Fraud against Wells Fargo Bank N.A.; (3) Negligence and Gross Negligence against Wells Fargo Bank N.A.; and (4) Violation of the Texas Theft Liability Act against Wells Fargo Bank N.A. and Wells Fargo West are **DISMISSED**.

It is so ORDERED.
SIGNED this 18th day of May, 2026.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE

---

[6] *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642–643 (5th Cir. 2007); *see also Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014).